No. 89-136

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,

      Plaintiff and Respondent,

  -vs-

MARK CHARLES BALDWIN,

      Defendant and Appellant.



APPEAL FROM:  District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable C.B. McNeil, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          James C. Bartlett; Hash, O'Brien & Bartlett,
Kalispell, Montana

      For Respondent:

          Hon. Marc Racicot, Attorney General, Helena, Montana
Elizabeth S. Baker, Asst. Atty. General, Helena
Ted O. Lympus, County Attorney, Kalispell, Montana
Thomas J. Esch, Deputy, Kalispell


Submitted on Briefs:  Jan. 18, 1990

Decided:  March 20, 1990

Filed:

Clerk

Justice Diane G. Barz delivered the Opinion of the Court.

Mark Baldwin appeals his conviction for criminal possession of dangerous drugs with intent to sell in the District Court of the Eleventh Judicial District, Flathead County. The District Court sentenced appellant to twenty years in the Montana State Prison, with five years suspended, imposed a $20,000 fine and designated appellant a dangerous offender. We affirm.

Appellant raises three issues on appeal:

1. Can probable cause for issuing a search warrant be based in part on documents obtained through an investigative subpoena the application for which contained material false statements?

2. Did the District Court erroneously deny appellant's motion to suppress evidence seized during execution of a search warrant issued upon inadequate probable cause?

3. Did the District Court properly designate appellant a dangerous offender?

Sergeant Rick Hawk of the Flathead County Sheriff's Department applied for an investigative subpoena duces tecum for power and telephone records for appellant's residence at 420 Sharon Road in Kalispell. Included in the application was a tip received by the Flathead County Sheriff's Department in 1983 regarding appellant's alleged involvement in cocaine importation. The tipster stated appellant would travel to Seattle to pick up a quantity of raw lumber shipped from Colombia. This shipment allegedly concealed cocaine. Joint observation by the Sheriff's Department and the

2

Drug Enforcement Administration revealed that appellant did indeed travel to Seattle but was unable to collect the delivery described. Documentation of the shipment showed it contained raw Colombian lumber.

Hawk also made part of his application a statement made by appellant's ex-wife during a 1984 deposition taken in the course of their dissolution to the effect that appellant "is and always has been a drug dealer." Additionally, the Flathead County Attorney in February, 1987, reported an anonymous tip that appellant concealed a hydroponic marijuana cultivation operation in his garage. After compiling this data, Sgt. Hawk then contacted a confidential informant whose statements he included in the application for investigative subpoena. According to this informant, appellant remodeled his garage so that it appeared to contain an apartment. However, a false wall in the building concealed appellant's marijuana growing operation. Appellant reportedly had three associates, one of whom provided the initial cash investment. Each of the other two possessed 2,500 marijuana plants. Appellant reportedly had 2,500 mature plants, located both in his house and the garage, and 2,500 "starts." The informant's information derived primarily from a source close to appellant although the informant observed the grow operation in October or November of 1987.

Electricity usage records from Pacific Power and Light Company and telephone records from Northwestern Telephone Company were obtained from the subpoenas issued pursuant to the first

3

application. The second application for an investigative subpoena duces tecum contained additional facts.

Records subpoenaed from Pacific Power and Light Company indicated that appellant's residence was not heated by electricity. In addition, the account for 420½ Sharon Road was in the name of Mike Barker. Barker was also listed as the guarantor on appellant's account. On Pacific Power and Light records appellant listed his employment as "disabled." Sgt. Hawk drove by appellant's residence at 420 Sharon Road and verified that an addition to the garage located on the property bore the number 420½. Sgt. Hawk set forth further information gleaned from public records, specifically a Warranty Deed, and thus stated in his application that appellant paid $10,000 cash and other consideration for the property at 420 Sharon Road. Sgt. Hawk further stated that appellant, although without visible means of support, obtained "clear title" to this property.

Based upon respondent's second application, the District Court issued subpoenas to Pacific Power and Light Company for 420½ Sharon Road, Montana Power Company for 420 and 420½ Sharon Road, Safeco Title Company and First Interstate Bank. In his application for a warrant to search Mark Baldwin's residence for evidence of criminal possession of dangerous drugs and paraphernalia, Sgt. Hawk included information in addition to the above:

> Affiant is an officer with the Flathead County Sheriff's Department and has been so employed for 13 years.
>
> That he is currently assigned as Sergeant in charge of the Special Investigations Division of the Sheriff's

4

Department which primarily investigates drug offenses and has been thus engaged in drug investigations for the past 4 years.

Affiant has an advanced certificate from the Montana Police Officers Standards Training Council (POST), and has approximately four years of investigative experience in general investigations with the Flathead County Sheriff's Department prior to his appointment to Special Investigations. Affiant has continued his education by attending police schools including the United States Drug Enforcement Agency Advanced Drug Investigation School, The Montana Law Enforcement Academy (MLEA) Drug Commanders School, and the Harris and Assoc. Drug Enforcement Seminar. Affiant also maintains membership in 2 professional organizations which are the International Narcotic Enforcement Officers Association, and the American Canadian Drug Conference. In addition this affiant has personally investigated in excess of 300 drug cases.

Further investigation revealed that there is a natural gas line to the property. On 9-9-88 an investigative subpoena was served on Montana Power Company, records received as a result, indicate that both the house and shop have natural gas heating and hot water.

That records obtained by subpoena from First Interstate Bank show that Mark purchased the property on Sharon Rd. from Jerry and Geri Galloway for $35,000.00, putting $7,750.00 as down payment, leaving a balance of $27,250. On 10-1-86 Mark paid the Galloways $10,000 dollars, and started making $350.00 per month payments. On 3-1-88 Mark paid off the Whitefish Credit Union and assumed the loan at the 1st Interstate Bank.

That in a Residential Loan Application dated 2-5-88 and signed by Mark, he listed his employment as Treasure/Bookkeeper for Kokanee Const. Corp. box 952, Kalispell, Mt. which he stated is a holding company. This affiant contacted the Montana Corporations Bureau who advised that Kokanee Const. was incorporated on 3-5-80 as a general construction company and was involuntarily dissolved on 12-15-82. There were no annual reports filed. This affiant then checked the current phone book, both white and yellow pages, and the Polk's city directory, neither of which had a listing. This affiant then contacted the Kalispell Chamber of Commerce which has never heard of Kokanee Const., and the Montana Assoc. of Contractors which advised that Kokanee does not have a Contractors License in the state of

5

Montana.

That despite evidence as listed above that Mark Baldwin has no employment it appears that he was able to raise a substantial sum of money in 17 months to put down on and make payments on the property he purchased.

That the average consumption of electricity for all of Pacific Power and Light's residential customers for 1987 was 1000 to 1100 KWH per month.

That this affiant contacted Gary Mahugh the Member Service Advisor for Flathead Electric Cooperative who stated that the average usage of electricity for family of four is around 1000 to 1100 KWH per month, but should drop to 600 to 800 KWH per month if there is no electric heat or hot water.

That Mark Baldwin's residential electricity use in kilo watt hours as determined from PP&L records is as follows.

| AUGUST | 1987=1713 | FEBRUARY | 1988=862 |
| SEPT. | 1978=1629 | MARCH | 1988=1395 |
| OCT. | 1987=1640 | APRIL | 1988=1592 |
| NOV. | 1987=1742 | MAY | 1988=1001 |
| DEC. | 1987=1931 | JUNE | 1988=1373 |
| JAN. | 1988=2125 | JULY | 1988=1510 |
| | | AUG. | 1988=1884 |

The average usage for the above months is 1565 KWH per month.

The average KWH for the same months listed above for the apartment which is attached to the garage was 1157 KWH per month. The garage also has natural gas heat and hot water and had a separate average electricity usage for the above months of 1771 KWH per month.

The information obtained from Montana Power Company shows that there was gas consumption during the entire time period listed above, meaning that the gas furnace and hot water heaters were in a working condition and had not been replaced by electrical appliances, which might account for the higher than average electricity consumption.

This affiant knows from training and experience that when growing a large number of plants in an enclosed space ventilation is required. Visual observation and photographs of the Baldwin property show two of what appear to be gas appliance vents on the back part of the shop roof. There is also a revolving louver ventilating

6

fan in the same area. There is what appears to be a power vent for a fan located on the back wall of the shop near the top.

On 9-20-88 this affiant contacted a neighbor of Mark Baldwin's who confirmed that Baldwin is a bachelor, has no commercial enterprise operating from his garage, and told the neighbor that he is disabled. The neighbor was not able to note an obvious disability. The neighbor also has not observed any one residing in the apartment in the garage.

The pattern of electrical use and financial expenditures without an obvious income is consistent with, and fully supports the information from the anonymous and confidential informants that Mark Baldwin is growing and selling marijuana.

Upon execution of the search warrant, the Sheriff's Department seized, among other things, approximately 663 marijuana plants, equipment for growing marijuana plants and other drug paraphernalia. Appellant was charged by information with criminal possession of dangerous drugs with intent to sell, in violation of § 45-9-103(1), MCA. The District Court denied appellant's motion to suppress evidence obtained upon execution of the search warrant based on lack of probable cause.

Appellant waived his right to a jury trial and agreed to a bench trial upon stipulated facts. The District Court found appellant guilty as charged. Following a pre-sentence investigation, the District Court sentenced appellant to twenty years in the Montana State Prison with five years suspended and a dangerous offender designation, and fined him $20,000.

Respondent filed two applications for investigative subpoenas on consecutive days. Appellant maintains both applications contained stale information and that the second set forth material

7

false conclusions derived from public records. Appellant likens an investigative subpoena to a search warrant in terms of the foundation required before either properly issues. Appellant endorses a rule excluding from a search warrant application evidence derived from an investigative subpoena issued despite the absence of a compelling state interest.

Respondent asserts that the scope of an investigative subpoena is less intrusive than that of a search warrant, thus limiting the availability of Fourth Amendment remedies. The respective statutory provisions authorizing search warrants and investigative subpoenas bolster this contention. Law enforcement officials may use investigative subpoenas to compel the presence of witnesses or the production of documents. Clearly this section does not contemplate the "search of a person, object, or place. . ." or the seizure of "instruments, articles or things. . ." and therefore is not as intrinsically intrusive as a search warrant. Section 46-5-101, MCA.

Section 46-4-301, MCA, sets forth the criteria for issuance of an investigative subpoena. A judge properly issues an investigative subpoena "[w]henever the attorney general or a county attorney has a duty to investigate alleged unlawful activity. . ." and "it appears upon the affidavit [submitted]. . .that the administration of justice requires [the subpoena] to be issued."

Conversely, a search warrant application

(a) states that an offense has been committed;

(b) states facts sufficient to show probable cause for issuance of the warrant;

8

(c) particularly describes the place, things, or persons to be searched; and

(d) particularly describes the things to be seized.

Section 46-5-202(1), MCA. The prerequisites for obtaining a search warrant are more stringent than those for acquiring an investigative subpoena.

Furthermore, the relief from improper issuance of an investigative subpoena is either dismissal of the subpoena or limitation of its scope. Section 46-4-303, MCA. Evidence derived from an improperly issued search warrant may be excluded during the trial of the criminal defendant. State v. Rydberg (Mont. 1989), 778 P.2d 902, 46 St.Rep. 1519.

Underlying both remedies is the balance between protection of individual privacy rights and the compelling state interest in investigating and prosecuting unlawful activity. The District Court in the instant case had ample evidence from which to conclude the administration of justice required issuance of the subpoenas. The second application for subpoena duces tecum contained financial misinformation. Specifically, it stated that appellant paid the sellers of his residence $10,000 in addition to his down payment. This resulted from Sgt. Hawk's misreading of a warranty deed executed by sellers in favor of appellant. The warranty deed set forth the consideration paid as $10.00 which Sgt. Hawk read as $10,000. The only significant information derived from the second group of subpoenas was a record of power utilized in appellant's building located behind his residence. The erroneous conclusions

9

contained within the application regarding appellant's financial status did not invalidate the remaining information. We decline to extend the remedy provided by the exclusionary rule to investigative subpoenas. Appellant's power records were properly considered in issuing the search warrant.

Our function is not to review de novo the magistrate's determination that probable cause existed justifying the issuance of a search warrant. State v. Sundberg (Mont. 1988), 765 P.2d 736, 741, 45 St.Rep. 2235, 2240. Rather, we must presume the magistrate properly issued the search warrant after subjecting the application to the totality of the circumstances test. Sundberg, 765 P.2d at 739-41; Illinois v. Gates (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, reh'g. denied 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983). "The burden of proving that the search and seizure were unlawful shall be on the defendant." Section 46-13-302(4), MCA. Appellant in this case failed to meet this burden.

Appellant's contention of illegality is twofold. First, appellant maintains that the materially false conclusions derived from public records and set forth in the search warrant application undermine the showing of probable cause. Secondly, appellant asserts certain information included in the search warrant was stale and therefore insufficient to establish probable cause. We find probable cause existed excluding the financial data. Sgt. Hawk set forth in the application a pattern of criminal behavior --a frustrated attempt to complete a cocaine transaction, a history of selling illegal drugs and cultivation of marijuana plants. Sgt.

10

Hawk's informant stated that appellant grew marijuana in his home and in his garage. The informant also stated an addition purported to be a separate apartment was attached to the garage. Sgt. Hawk drove by the residence and verified this information noting also the appliance vents and ventilating fans located on the structure which were consistent with the ventilation required for an enclosed growing operation. A neighbor stated that appellant carried on no commercial enterprise at this location nor did another individual reside in the apartment.

Appellant argues that Sgt. Hawk failed to set forth average electricity consumption by marijuana growers and asserts the kilowatts used by appellant were less than this average. We find this argument less than persuasive. Utility records demonstrated that three separate locations on appellant's property consumed more power individually than a family of four. This information adequately demonstrated probable cause for a search warrant to issue under the totality of the circumstances test.

Appellant finally maintains the District Court erred in designating him a dangerous offender pursuant to § 46-18-404(1), MCA, which provides:

> [t]he sentencing court shall designate an offender a nondangerous offender for purposes of eligibility for parole under part 2 of chapter 23 if:

> (a) during the 5 years preceding the commission of the offense for which the offender is being sentenced, the offender was neither convicted of nor incarcerated for an offense committed in this state or any other jurisdiction for which a sentence to a term of imprisonment in excess of 1 year could have been imposed; and

11

(b) the court has determined, based on any presentence report and the evidence presented at the trial and the sentencing hearing, that the offender does not represent a substantial danger to other persons or society.

The District Court made the following observations upon sentencing appellant:

The record before this Court indicates a long term involvement with drugs.

In the 1984 sworn statement you were described as a Defendant and as having been a drug dealer.

The confidential informants that advised the arresting officer, in 1988, stated that you had been involved in a -- in growing marijuana in your house and shop for a period of three years.

The exhibits introduced today, a receipt for some $2,482.78 worth of hoods, visqueen, halogen lights and so forth, is dated September 10th, 1986.

So that indicates to this Court that you have clearly been growing marijuana in excess of the three years submitted by the confidential informant.

The large scale and degree of sophistication of growing systems indicate to this Court that not only has it been in operation for quite some time, but I believe it's a reasonable conclusion that you would still be growing and selling marijuana and would likely continue to do so for some time in the future if it had not been for the intervention of the Flathead County Sheriff's Office and particularly of Sergeant Hawk.

This despicable and reprehensible crime represents a substantial contribution to a major plague upon society, the growing of dangerous drugs for sale.

The correctional policy of the State of Montana is to protect society by preventing crimes from punishment and rehabilitation. The extent of your commercial drug operation dictates the necessity of long term protection of society.

It's the sentence and judgment of this Court that you are sentenced to twenty years in the Montana State Prison. The Defendant is to receive credit for time served. This will protect society from your poisonous propensities for the maximum period allowed by law and

12

will shut down your elicit drug farming for as long as the legislature permits for your crime.

In addition there is imposed a fine of $20,000 which represents but a fraction of the evil profits that you undoubtedly have obtained from your marijuana growing.

Taking into consideration the Defendant's lack of any prior criminal record, his present health, his family background, there is hereby suspended five years from the sentence leaving fifteen years to serve with the balance on formal probation for parole.

The Montana Code Annotated, Section 46-18-404 provides that a sentencing Court shall, for parole purposes, designate an offender non-dangerous if he has no other felony convictions during the preceding five years and the Court has determined, based on the presentence report and evidence presented at trial and the sentencing hearing, that the offender does not represent a substantial danger to other persons or society.

This Court holds that the Defendant, Mark Baldwin, is not eligible to be designated as a non-dangerous offender because his large quantity possession of dangerous drugs, marijuana, with intent to sell, does represent a substantial danger to prospective large numbers of other persons who would use this dangerous drug and the Defendant represents a substantial danger to society because of his possession with intent to sell this drug.

. . .

The District Court adequately set forth factors from which it could determine appellant constituted a substantial danger to others.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

13

_John Conway Harrison_

_Justices_

Justice R. C. McDonough dissenting:

I disagree.  The application for the search warrant fails to establish probable cause which must be shown before the government can legally search a citizen's home and personal effects.

The duty to conduct evaluations of evidence supplied by law enforcement authorities and to determine whether permission to search a citizen's home should be given, belongs to the judiciary. In making this determination the courts examine the "totality of the circumstances" surrounding the State's allegations in the application for the search warrant.  Illinois v. Gates (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527; State v. Kelly (1983), 205 Mont. 417, 668 P.2d 1032.  The courts should only give permission to conduct a search when these "circumstances" establish probable cause.

Probable cause, which defines the point at which the individual's interest in privacy must yield to the governmental interest in investigating criminal behavior, is a practical, nontechnical concept of criminal procedure.  It is not a prima facie showing of criminal activity, but rather only requires a showing of its probability.  State v. Sundberg (Mont. 1988), 765 P.2d 736, 45 St.Rep. 2235.  In order to determine whether there was probable cause to issue a search warrant, we must look only at information contained in the four corners of the application. State v. Jensen (1985), 217 Mont. 272, 704 P.2d 45.  An examination of the application in the present case leads to the conclusion that

15

sufficient probable cause did not exist.

An application in the form of an affidavit for a search warrant, must set forth facts which demonstrate that a law is being violated at the time the warrant is issued. State v. Walston (Mont. 1989), 768 P.2d 1387, 46 St.Rep. 309. One reason for this rule is to prevent present or continuing harassment of a suspect due to past criminal allegations or transgressions. The police should not be given blanket authority to search a citizen's home on the basis of allegations which do not support the conclusion that criminal activity is presently occurring. The facts here do not support such a conclusion and were, therefore, improperly relied upon.

The application contains references to numerous instances of unlawful involvement with drugs by the appellant. However, the allegations contained in these references occurred long before the search warrant was issued. For example, the application states that in 1983, the appellant was involved in the importation of cocaine. It also contains an allegation made by Baldwin's ex-wife, during a bitterly contested divorce proceeding in 1984, that he "is and always has been a drug dealer."

The search warrant was issued on October 3, 1988. Therefore, the above two allegations, which were made approximately four years earlier, do not establish that appellant was involved in any illegal activity in close proximity to the time of the issuance of the warrant. The other alleged instances of criminal activity occurred months before the search warrant was issued. According

to the application, the Flathead County Attorney received an anonymous tip concerning appellant's illegal activities on February 25, 1987. This tip was given almost two years before his house was searched. The final observation of appellant's alleged marijuana operation apparently occurred in October or November of 1987--a full year before the search occurred.

This information is not sufficient to establish probable cause and therefore is not legally sufficient to uphold the search warrant. Before a search warrant can be issued, it is incumbent upon the State to show that the alleged criminal conduct is occurring at the present time. State v. Walston (Mont. 1989), 768 P.2d 1387, 46 St.Rep. 309.

A further shortcoming of the application is its failure to set forth factors apprising the court of the anonymous informant's reliability. According to the application, the investigating officer relied upon information obtained through a "confidential informant." The affidavit does not, however, contain any information which would tend to bolster the informant's credibility or apprise the court of the officer's reasons for believing the informant was trustworthy. Jones v. United States (1960), 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697; State v. Seaman (Mont. 1989), 771 P.2d 950, 46 St.Rep. 512.

This omission is a major flaw to the affidavit. The information was obtained by the informant through a friend. Apparently, the informant never personally observed the marijuana growing operation. Despite the inherently unreliable nature of

17

this hearsay, the investigating officer never offered any evidence establishing the informant's basis of knowledge or reliability.

In lieu of this information, the officer sought to corroborate the anonymous tip with independent evidence obtained through the power company and the appellant's financial records. During this investigation, the police officer misread a term in a contract for deed and as a result of this mistake, wrongfully apprised the court of the appellant's financial condition. This mistake, which significantly exaggerated the amount of money spent by the defendant, requires that all references to his financial dealings be excised from the affidavit. This information cannot be used to establish probable cause on the later motion to suppress before the District Court. State v. Nanoff (1972), 160 Mont. 344, 502 P.2d 1138; Franks v. Delaware (1978), 438 U.S. 154, 98 S.Ct. 2646, 57 L.Ed.2d 631.

The investigating officer also subpoenaed the appellant's utility records. These records indicated that the appellant consumed an unusually large amount of electricity. Because an indoor marijuana growing operation uses high-powered solar lamps, the investigating officer reasoned that this high electricity use was indicative of such illegal activity. This information was included within the affidavit to bolster the information supplied by the anonymous tip. The officer also, through a personal viewing of the house, observed ventilating fans on the shop. These fans, it is argued, further corroborate the belief that the appellant had a large scale growing operation.

However, this information alone does not establish the probability of any illegal activity. The electrical consumption and the ventilating fans are equally indicative of normal, everyday activity, such as a home welding operation. The officer failed to compare the appellant's electrical consumption with that of the previous owners and therefore failed to satisfactorily establish that the power usage was extraordinarily high. This information has at best, only minor corroborative effect.

As a whole, the information contained in the affidavit, after examining the "totality of the circumstances," does not establish probable cause. The false financial information indicating the appellant had access to large sums of money was properly excised from the affidavits. However, the stale information contained within the application, which was at least a year old, was improperly relied upon. Had this information been properly excised, the affidavit would not have met the "totality of the circumstances" test. When this information is taken out, the only facts left which provide any indication of illegal activity, are that the appellant used a large amount of electricity, that his garage was equipped with an extensive ventilating system and the statement of a neighbor that the appellant operated no commercial enterprise on his property. This information under a "totality of the circumstances" analysis does not meet the standard necessary to allow the government to search a citizen's home.

The application for the search warrant is insufficient as a matter of law, because it relies upon stale information which is

several years old, a mistaken reading of the appellant's financial records, and unsubstantiated rumors. This is inherently weak evidence and it does not meet the necessary threshold of probable cause. Therefore, this case should be reversed and remanded with instructions to suppress the evidence seized pursuant to the issued search warrant.

_____
                                Justice

Justices William E. Hunt, Sr., and John C. Sheehy concur in the foregoing dissent.

_____

_____
                                Justices

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 89-136

STATE OF MONTANA,

     Plaintiff and Respondent,

v.                           )     O R D E R

MARK CHARLES BALDWIN      )

     Defendant and Appellant.

---

On March 20, 1990, this Court issued its Opinion in the above entitled case. On March 29, 1990, appellant filed a petition for rehearing and the respondent State has filed its response. After considering the same, IT IS HEREBY ORDERED that the following changes be made in our opinion in this matter.

1.  Delete the following paragraphs on pages 2, 3 and 4:

> Sergeant Rick Hawk of the Flathead County Sheriff's Department applied for an investigative subpoena duces tecum for power and telephone records for appellant's residence at 420 Sharon Road in Kalispell. Included in the application was a tip received by the Flathead County Sheriff's Department in 1983 regarding appellant's alleged involvement in cocaine importation. The tipster stated appellant would travel to Seattle to pick up a quantity of raw lumber shipped from Colombia. This shipment allegedly concealed cocaine. Joint observation by the Sheriff's Department and the Drug Enforcement Administration revealed that appellant did indeed travel to Seattle but was unable to collect the delivery described. Documentation of the shipment showed it contained raw Colombian lumber.

> Hawk also made part of his application a statement made by appellant's ex-wife during a 1984 deposition taken in the course of their dissolution to the effect that appellant "is and always has been a drug dealer."

1

Additionally, the Flathead County Attorney in February, 1987, reported an anonymous tip that appellant concealed a hydroponic marijuana cultivation operation in his garage. After compiling this data, Sgt. Hawk then contacted a confidential informant whose statements he included in the application for investigative subpoena. According to this informant, appellant remodeled his garage so that it appeared to contain an apartment. However, a false wall in the building concealed appellant's marijuana growing operation. Appellant reportedly had three associates, one of whom provided the initial cash investment. Each of the other two possessed 2,500 marijuana plants. Appellant reportedly had 2,500 mature plants, located both in his house and the garage, and 2,500 "starts." The informant's information derived primarily from a source close to appellant although the informant observed the grow operation in October or November of 1987.

. . .

Records subpoenaed from Pacific Power and Light Company indicated that appellant's residence was not heated by electricity. In addition, the account for 420½ Sharon Road was in the name of Mike Barker. Barker was also listed as the guarantor on appellant's account. On Pacific Power and Light records appellant listed his employment as "disabled." Sgt. Hawk drove by appellant's residence at 420 Sharon Road and verified that an addition to the garage located on the property bore the number 420½. Sgt. Hawk set forth further information gleaned from public records, specifically a Warranty Deed, and thus stated in his application that appellant paid $10,000 cash and other consideration for the property at 420 Sharon Road. Sgt. Hawk further stated that appellant, although without visible means of support, obtained "clear title" to this property.

2. The deleted paragraphs shall be replaced by the following:

Deputy Flathead County attorney, Thomas J. Esch, applied for an investigative subpoena duces tecum for power and telephone records for appellant's residence at 420 Sharon Road in Kalispell. Included in the application was a tip received by the Flathead County Sheriff's Department in 1983 regarding appellant's alleged involvement in cocaine importation. The tipster stated appellant would travel to Seattle to pick up a quantity of raw lumber shipped from Colombia. This

2

shipment allegedly concealed cocaine. Joint observation by the Sheriff's Department and the Drug Enforcement Administration revealed that appellant did indeed travel to Seattle but was unable to collect the delivery described. Documentation of the shipment showed it contained raw Colombian lumber.

Esch also made part of his application a statement made by appellant's ex-wife during a 1984 deposition taken in the course of their dissolution to the effect that appellant "is and always has been a drug dealer." Additionally, the Flathead County Attorney in February, 1987, reported an anonymous tip that appellant concealed a hydroponic marijuana cultivation operation in his garage. After compiling the above data, Sgt. Rick Hawk of the Flathead County Sheriff's Department then contacted a confidential informant whose statements were included in the application for investigative subpoena. According to this informant, appellant remodeled his garage so that it appeared to contain an apartment. However, a false wall in the building concealed appellant's marijuana growing operation. Appellant reportedly had three associates, one of whom provided the initial cash investment. Each of the other two possessed 2,500 marijuana plants. Appellant reportedly had 2,500 mature plants, located both in his house and the garage, and 2,500 "starts." The informant's information derived primarily from a source close to appellant although the informant observed the grow operation in October or November of 1987.

. . .

Records subpoenaed from Pacific Power and Light Company indicated that appellant's residence was not heated by electricity. In addition, the account for 420½ Sharon Road was in the name of Mike Barker. Barker was also listed as the guarantor on appellant's account. On Pacific Power and Light records appellant listed his employment as "disabled." Sgt. Hawk drove by appellant's residence at 420 Sharon Road and verified that an addition to the garage located on the property bore the number 420½. Esch set forth further information gleaned from public records, specifically a Warranty Deed, and thus stated in his application that appellant paid $10,000 cash and other consideration for the property at 420 Sharon Road. The application further stated that appellant, although without visible means of support, obtained "clear title" to this property.

3

3.    With the above changes ordered, this Court finds no sufficient basis for rehearing of this matter.

4.    Remittitur shall issue forthwith.

DATED this __12th__ day of April, 1990.



_____
Chief Justice

_____

_____

_____

_____

_____
Justices


Justice R. C. McDonough, Justice John C. Sheehy, and Justice William E. Hunt, Sr., would grant a rehearing.

4