No. 90-275

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

       Plaintiff and Respondent,

v.

NEAL VALLEY,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Robert Keller, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

              Terry A. Wallace (argued), Attorney at Law,
Missoula, Montana

       For Respondent:

              Hon. Marc Racicot, Attorney General, Helena,
Montana; Jennifer Anders (argued), Assistant
Attorney General, Helena, Montana
Robert Deschamps, III, Missoula County Attorney,
Missoula, Montana

FILED

JAN 1 4 1992

Filed:

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted:   September 10, 1991

Decided:   January 14, 1992

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

After final judgment, defendant, Neal Valley, appeals from a decision of the Fourth Judicial District, Missoula County, denying his motion to suppress physical evidence based on lack of probable cause for issuance of a search warrant. We reverse.

The sole issue on appeal is whether the District Court erred in denying defendant's motion to suppress.

On March 31, 1988, the Missoula County Sheriff's Department applied to District Court for a warrant to search the residence of defendant, Neal Valley. The application for the search warrant was based on anonymous and confidential tips. The tips as set forth in the application contain the following information:

1) August 22, 1981--An individual living in the Potomac area contacted the sheriff's department and said that in January of 1981 Neal Valley had informed him that he had been the victim of a theft of $15,000.00 worth of marijuana, a shipment Valley had received from Florida and was storing in his attic waiting to sell. Because the tip was stale at the time, the sheriff's office took no action.

2) May 22, 1986--An individual from the Potomac area contacted the sheriff's department and said that Valley was growing and selling marijuana from his residence. The individual further stated that Valley had high school kids doing odd jobs at his cabinet shop, and Valley sometimes pays them with marijuana. The individual said that he knew this because Valley supplied his son with marijuana until the time his son joined the army. The sheriff's department took no action.

3) May 28, 1987--A confidential informant, other than the individuals mentioned above, contacted the sheriff's department and said Valley was growing, packaging, and selling marijuana. The informant further stated he had personally observed the operation located in a large red barn-like building that also housed Valley's cabinet shop. The informant stated that since then the operation was expanded into several other buildings on the property and possibly was heated by solar panels. The sheriff's department took no action.

4) March 28, 1988--The sheriff's department received a crimestoppers tip in which the caller said that Valley was selling marijuana from his residence and he uses the caller's son to deliver marijuana to customers. The caller stated that he lives in the Potomac area and has personal knowledge of the transactions. The caller said that this was the first time he had ever contacted law enforcement, but he would call again if he found out more.

5) March 30, 1988--The above crimestoppers tipster called again to the sheriff's department and related that on the previous night he overheard a conversation in the Potomac Bar between four individuals in which two of them stated that they were going to Valley's residence to purchase marijuana. The caller described the location of Valley's residence and described the property as having several outbuildings, including a large red barn, and a gate bearing the name "Valley" at the entrance to the property.

On March 31, 1988, detectives Terry Lambert and Larry Jacobs drove to the Potomac area and located Neal Valley's residence.

They saw a large red barn and several outbuildings along with the single story brown wood framed residence. Based upon all of the above information the District Court found probable cause and issued the warrant.

On April 1, 1988, the detectives searched the defendant's residence. The search recovered several pounds of marijuana, marijuana paraphernalia, and evidence of a marijuana growing operation.

On June 23, 1988, defendant moved to suppress the evidence obtained as a result of an illegal search. At a March 3, 1989 hearing, the District Court concluded that the first three tips in the application for the warrant were in and of themselves too remote to be a basis for probable cause. The information in the application for the warrant which the court did not consider too remote were the two Crimestopper's tips given by the same person on March 28 and March 30, 1988. On November 8, 1989, the District Court denied Valley's motion to suppress, based on this Court's application of the "totality of the circumstances" test in State v. Rydberg (1989), 239 Mont. 70, 778 P.2d 902.

This appeal followed.

Section 11 of Article II of the Montana Constitution protects the homes of the citizens of this State against unreasonable searches and seizures. Section 11 provides in part: "No warrant to search any place, or seize any person or thing shall issue without describing the place to be searched or the person or thing to be seized, or without probable cause, supported by oath or

affirmation reduced to writing." A showing of facts in the application for a search warrant is required to establish there is probable cause to believe that contraband or evidence is to be found at the place to be searched at the time the warrant is issued. Under the "totality of the circumstances" test set forth in Illinois v. Gates, the factors to be considered in determining probable cause are:

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. 462 U.S. 213,238 (1983).

We have since adopted the totality of the circumstances test. State v. O'Neill (1984), 208 Mont. 386, 679 P.2d 760. "The totality of the circumstances test is fact specific." See State v. Olsen (Minn. 1989), 436 N.W.2d 92. Informants' statements and tips are to be taken into consideration.

In the instant case, the major problem with the first three statements is they are stale. They do not give any indication that contraband or evidence would presently be at the place to be searched. The tips range in time and age from eleven months to over seven years. After receiving the tips, no independent investigation was made to verify or corroborate the tips. Such tips do not ripen and bear fruit on their own, or by the passage of time. Time does just the opposite. Their value recedes with the dimming of memories, changes of circumstances and availability of witnesses. The passage of time makes it all the more imperative

5

that a current investigation be made. The failure to verify or corroborate, or setting forth valid reasons why not, distracts from the probability proof in the application. Common sense dictates further investigation.

In determining probability, it is not the number of statements, tips or events that is determinative relative to the common sense approach, it is the probative force of one, some or all of them. Insufficient data to establish probable cause is not strengthened by number or repetition.

Stale information along with the lack of any evidence of the informant's veracity and the lack of investigation, defeats any valid showing which can serve as a basis for probable cause. We agree with the District Court in not taking into consideration the statements in tips No. 1, 2 and 3.

The only current information available to law enforcement was tips four and five. These were crimestoppers tips. They were given anonymously by a citizen informant. Did the information contained in such tips establish probable cause? The Iowa Supreme Court in analyzing the reliability of a citizen informant said that a citizen informant is presumed reliable. However, this is not a per se rule. The reliability of a citizen informant is generally shown by the very nature of the circumstances under which the incriminating information became known. State v. Niehaus (Iowa 1990), 452 N.W.2d 184, 189.

One of the circumstances here is that the informant is anonymous. Usually a citizen informer known to the police is more

6

probative. Then under what circumstances did this incriminating information become known to the informant? He stated he had personal knowledge of the sale of marijuana by the defendant from defendant's house in tip No. 4, but gave no basis for his knowledge or any further detail relative to his personal knowledge. He also stated his son was delivering marijuana for the defendant but does not state how he obtained this information or any further details related to the same. In tip No. 5, he does disclose the source of his information was overhearing a conversation in a bar by two bar customers who stated they were going to the defendant's home to buy marijuana. The facts of the description and location of defendant's property were easily confirmable by a driveby and can hardly be probative to the probability of contraband therein. Common sense required further investigation to confirm the reliability of these tips.

Given the circumstances, we conclude a magistrate could not properly assess the credibility of the informant or his sources. The underlying circumstances from which an informant receives his information can be the basis of his knowledge but here such circumstances were nominal and there was no inclusion of such detail that the information became self-verifying or was able to be sufficiently corroborated. See State v. Schaffer, 107 Idaho 812, 693 P.2d 458 (Ct.App. 1984).

We conclude that the application for the warrant did not contain sufficient facts and circumstances under the Gates test.

If this search were to be upheld, the law would allow an

7

anonymous tipster to call the police on a phone and state that John Doe is selling marijuana, the tipster's son is delivering it (who told him his son is delivering is not stated), and the tipster heard bar talk of John selling and that John lives at such and such an address in a brown house with a red garage. No other verification, corroboration or facts would need to be presented. The magistrate would have no way of ascertaining whether this tip was rumor, speculation, vendetta, reprisal, or gossip. It is contrary to common sense that this information is a basis for probable cause to search a citizen's home and invade his privacy.

The motion to suppress should have been granted and the judgment reversed and the cause remanded for further proceedings in accordance with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

8

Justice Fred J. Weber specially concurs as follows:

I concur with the majority opinion that the motion to suppress should have been granted and the judgment reversed. I specially concur in order to emphasize that the absence of adequate police investigation caused the reversal.

I agree with the majority's conclusion that tips 1, 2 and 3 had not been adequately investigated by the police and therefore could not properly be considered. I do emphasize that the staleness of these claims is not only because of age of the information, but results primarily from the absence of any prompt corroborating police investigation.

The majority emphasizes the inadequacy of the information contained in tips 4 and 5 which were the crimestoppers' tips given by an anonymous citizen informant. Such conclusions may tend to indicate that crimestoppers' tips are not usable. Experience has shown that crimestoppers' tips frequently afford a basis for arrest and ultimate conviction. The key missing link as to both tips 4 and 5 was the absence of an adequate law enforcement investigation to confirm the truthfulness of the tips. Where crimestoppers' tips and other similar tips are received, I emphasize the necessity of a prompt and adequate law enforcement investigation.

Unfortunately such investigation was not conducted in the present case. An adequate law enforcement investigation sufficient to demonstrate probable cause would have prevented the dismissal of the conviction of a clearly guilty defendant.

I join in the judgment of reversal in this case.

_____
Justice