No. 92-096

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE OF MONTANA,

      Plaintiff and Respondent,

  -vs-

HOWARD THOMAS CAMPBELL,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      David E. Stenerson, Hamilton, Montana

      For Respondent:

          Hon. Marc Racicot, Attorney General
Carol E. Schmidt, Assistant Attorney General
Helena, Montana
Robert L. Deschamps, III, County Attorney
Karen Townsend, Deputy County Attorney
Missoula, Montana

FILED

Filed: SEP 28 1992

Ed Smith

CLERK OF SUPREME COURT.
STATE OF MONTANA

Submitted on Briefs:  July 23, 1992

Decided: Sept. 28, 1992

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from an order of the Fourth Judicial District Court, Missoula County, denying defendant's motion to suppress evidence obtained in a search of defendant's home on July 18, 1991. We affirm.

The issues before the Court are:

1. Whether the District Court erred in denying defendant's motion to suppress; and

2. Whether the District Court should have required the State to release the identities of the informants.

The facts supporting the search warrant include: (1) On July 15, 1991, a reliable informant reported to Detective Fowlkes that another person had observed a marijuana growing operation in Howard Thomas Campbell (Thomas) and Christina Campbell's bedroom at 2225 South 7th Street West within the last two weeks. The informant also said that Thomas was distributing cocaine in the Missoula area. (2) On that same day, Detective Jacobs confirmed that the consumers responsible for the power bills at 2225 South 7th Street West were Thomas and Christina Campbell. (3) On July 16, 1991, Detective Peterson obtained a description of the Campbell residence. (4) He also checked Narcotics intelligence files which revealed that: (a) On May 8, 1989, Larry Weatherman of the Missoula County Sheriff's Office was informed by a confidential informant that Thomas was receiving cocaine from a person known in the area as a cocaine distributor. (b) Detective Eggett had responded to

2

and confirmed a report on July 29, 1989, that Christina Campbell had received a gunshot wound. Initially, it was thought to be an accident but a reliable informant later stated that the shooting was intentional to prevent her from disclosing her husband's drug problem. (c) A confidential informant told Detective Jacobs on August 16, 1990, that Thomas was distributing cocaine in the Missoula area and he could also obtain large quantities of marijuana. He also reported that Thomas had two vicious pit-bull type dogs. (d) Detectives Lewis and Jacobs responded to a call from the landlord on September 10, 1990, to investigate the residence at 2345 West Kent, Thomas' former rental house. An inspection of the residence uncovered the remains of an abandoned marijuana growing operation, including one-eighth ounce of marijuana and marijuana stems. The former landlord also reported that Thomas had 3 pit-bull dogs and had "beware of dog" signs posted on the property. (5) Finally, Detective Peterson obtained an investigative subpoena to review the power usage records for 2225 South 7th West. The analysis revealed that Thomas' power usage fell within the normal range from November 1990 through April 1991 but increased dramatically in May of 1991 even though the natural gas consumption had decreased considerably. (The large increase actually occurred in June 1991, not May, but this error was later corrected.)

The search warrant application was granted on July 16, 1991 and the search on July 18 disclosed marijuana, marijuana plants, literature on growing marijuana, marijuana paraphernalia and plant

3

food. The defendant was charged with criminal possession of dangerous drugs and criminal possession of drug paraphernalia.

Thomas filed a motion to suppress the evidence recovered in the search. The search warrant was upheld by the District Court and after final judgment this appeal by the defendant followed.

I

The core question is the sufficiency of the application for a search warrant. "To address the issue of probable cause for issuance of a warrant, this Court has adopted the 'totality of the circumstances' test set forth in Illinois v. Gates (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527." State v. Crowder (1991), 248 Mont. 169, 173, 810 P.2d 299, 302. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." State v. O'Neill (1984), 208 Mont. 386, 394, 679 P.2d 760, 764. "[T]he duty of the reviewing court is to ensure the magistrate had a 'substantial basis' for conclud[ing] that probable cause existed." Gates, 462 U.S. at 238-39, 103 S.Ct. at 2332, 76 L.Ed.2d. at 548. See Crowder, 810 P.2d at 302. "The magistrate's determination of probable cause should be paid great deference by reviewing courts." State v. Sundberg (1988), 235 Mont. 115, 123, 765 P.2d 736, 741. "Our function is not to review de novo the magistrate's determination that probable cause existed

4

justifying the issuance of a search warrant." State v. Baldwin (1990), 242 Mont. 176, 183, 789 P.2d 1215, 1220.

This case is illustrative of the classic Gates totality of the circumstances test. It also meets previous established tests. Some of the factors at issue here are of little probative value alone but taken together, under the Gates test, there is substantial evidence to conclude that probable cause existed to issue the search warrant.

The early "tips", provided by the confidential informants, claimed that Thomas was involved in obtaining and distributing drugs such as cocaine and marijuana. These tips, by themselves, are of questionable probative value and would be "stale" without more.

> Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant.

O'Neill, 679 P.2d at 765.

Together with the current tip from a reliable informant, the earlier tips have greater force. See State v. Walston (1989), 236 Mont. 218, 222-23, 768 P.2d 1387, 1390. (Also of note is the fact that Detective Fowlkes stated on the warrant that the current informant was reliable because he had given reliable information in the past.) These tips together support an argument that the defendant was involved in on-going criminal activity. See Crowder, 810 P.2d at 303.

5

Other factors add to the weight of the argument that the magistrate had probable cause to issue a search warrant. The evidence of a marijuana growing operation in Thomas' former residence, which was covered with warnings about his dogs, further adds to the probability that Thomas was involved in criminal activity. The dramatic increase in power consumption in June of 1991 adds some value to the State's case. Moreover, the shooting incident, in conjunction with other facts, increased the probability that the defendant was growing marijuana. All the facts contained in the search warrant, in their totality, combine to provide a substantial basis to conclude that probable cause existed to issue a search warrant.

## II

Defendant contends that the District Court erred in denying his motion to disclose the identity of the informants. He insists that the State did not meet its burden of showing the need for nondisclosure. The State, however, argues that the District Court order was correct because the defendant made only bald assertions about the informants and why they were unreliable. Also, the State asserts that the defendant did not meet his burden of demonstrating that his need to know the identities of the informants outweighed the State's privilege of nondisclosure.

The State has the privilege to refuse to disclose the name of an informer in a case under certain circumstances. Rule 502, M.R.Evid., and § 46-15-324(3), MCA.

Rule 502, M.R.Evid., provides that:

**Rule 502. Identity of informer.**

(a) Rule of privilege. The United States or a state or subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of a law.

. . .

(c) Exceptions and limitations.

(1) Voluntary disclosure; informer a witness. No privilege exists under this rule if the identity of the informer or the informer's interest in the subject matter of the informer's communication has been disclosed to those who would have cause to resent the communication by a holder of the privilege or by the informer's own action, or if the informer appears as a witness for the public entity.

. . .

Working in conjunction with Rule 502, M.R.Evid., is § 46-15-324(3), MCA (1989), which states:

(3) Disclosure of the existence of an informant or of the identity of an informant who will not be called to testify is not required if:

(a) disclosure would result in substantial risk to the informant or to his operational effectiveness; and

(b) the failure to disclose will not infringe the constitutional rights of the accused.

"The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." Roviaro v. U.S. (1957), 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639.

In order to claim the privilege, the State must meet a

7

balancing test adopted by the Montana Supreme Court from <u>Roviaro</u>.

State v. Babella (1989), 237 Mont. 311, 772 P.2d 875. This test:

> [C]alls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

<u>Babella</u>, 772 P.2d at 876. "In this balancing test the burden is on the <u>defendant</u> to show the need for disclosure, and this need must be one which overrides the government's interest. Mere speculation will not suffice." <u>Babella</u>, 772 P.2d at 878 (emphasis added).

In the instant case, the defendant contends that the chief informant made sexual advances toward his wife, Christina which were rejected and he has had several altercations with the defendant. The defendant claims that he was able to determine the identity of this informer <u>after</u> he had entered his pleas. He further claims that if he had known the identity of the informant earlier, a simple hearing would have established that the information that was reported to the authorities was erroneous. He also states that another informant had made sexual advances toward his daughter, giving that informant a reason for a vendetta against the defendant.

However, the defendant provides no facts to support his statement that two of the informants have a reason to falsify information about his activities, thereby violating his constitutional rights. He makes a bare assertion that these informants made sexual advances toward his wife and daughter. No

8

affidavits containing factual information about these situations were presented by the defense. The defendant must produce something more concrete than conclusory statements about confidential informants and the information they provide. The defendant has introduced no evidence to show that his constitutional rights will be violated by the State's failure to disclose the identities of the informants nor made any showing that he needs the identities of the informants in order to establish an adequate defense. In conclusion, the defendant submits no set of facts which would tip the balance in his favor under the Roviaro test.

The District Court correctly concluded that the magistrate had a substantial basis upon which to issue the search warrant and that the identity of the informers should not be disclosed.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

9

September 28, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

David E. Stenerson
Attorney at Law
P.O. Box 1667
Hamilton, MT   59840

Hon. Marc Racicot, Attorney General
Carol E. Schmidt, Assistant
Justice Bldg.
Helena, MT   59620

Robert Deschamps, III, County Attorney
Missoula County Courthouse
Missoula, MT   59802

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
      Deputy