No. 92-481

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

STATE OF MONTANA,

        Plaintiff and Respondent,

-v-

ROBERT L. HOLSTINE,

        Defendant and Appellant.

FILED

SEP 13 1993

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Stuart R. Whitehair, Bozeman, Montana

        For Respondent:

            Hon. Joseph P. Mazurek, Attorney General, Helena,
            Montana; A. Michael Salvagni, County Attorney, Marty
            Lambert, Deputy, Bozeman, Montana

Submitted on Briefs:  April 16, 1993

Decided:  September 13, 1993

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Robert L. Holstine (defendant) appeals his conviction of felony possession of dangerous drugs by the District Court of the Eighteenth Judicial District, Gallatin County. We affirm.

On February 14, 1991, Detective Mark Tymrak of the Bozeman City Police Department, was approached by a confidential informant who offered to provide information on a marijuana grow operation in the Big Sky area near Gallatin Gateway, Montana. The confidential informant described in detail the location of the residence just north of Big Sky where a man known as "Cutter Bob" lived. The confidential informant also gave a physical description of the residence, the person involved in the operation and his vehicle, and the marijuana grow operation itself. Further, the informant provided details of the grow operation, including the approximate number of plants and information that there was at least one grow light and a fan.

Detective Tymrak contacted Lieutenant Pronovost of the Gallatin County Sheriff's Department and two officers of the Gallatin County Drug Task Force, Detectives Lenard and Sanem. Detective Tymrak and another detective traveled to Big Sky later that afternoon to corroborate the information given by the confidential informant. After verifying that the residence and its location matched the description given by the confidential informant, they met with local deputies assigned to the Big Sky area, who helped the detectives determine that "Cutter Bob" was the

2

defendant, Robert L. Holstine, and that defendant had been charged in 1989 with possession of drug paraphernalia.

At approximately 11:30 p.m., Detectives Lenard, Sanem and Pronovost of the Gallatin County Drug Task Force drove back to the Gallatin Gateway area. Detective Lenard parked his car on Highway 191 in a spot visible from defendant's residence and left the emergency lights flashing. Wearing ski clothing and posing as a stranded motorist, Detective Lenard approached the residence while the other two detectives waited out of sight in another vehicle.

When defendant answered the door, Lenard told him that his car had broken down and asked the defendant if he could use his phone. The defendant led Lenard through an entryway and into a bedroom area in the main part of the residence, which consisted of a mobile home with a full-length addition. Lenard testified that he observed shop tools and cut antlers in the entrance area and detected the odor of marijuana smoke in the air. He observed no marijuana grow operation. Lenard testified that he was in the residence for only about forty-five seconds, during which time he used the phone and called his office, leaving a message on his answering machine.

Lenard left the residence and walked back to his car. He removed his skis from the top of his car and again approached the residence. He knocked on the door again, this time asking the defendant if he could leave his skis inside the residence. Lenard told defendant that he planned to leave his car on the side of the highway and feared the skis would be stolen. This time defendant

3

did not admit Lenard into his home. Instead, he advised Lenard that he would be gone the next day, but that Lenard could leave the skis propped against the west side of the residence which was out of view from passersby. Lenard thanked the defendant, shook his hand and told him his name was Kevin Adams.

Lenard then walked around to the west side of the residence and propped his skis against the residence while he looked for additional information. The confidential informant had stated that the grow operation was located in the southwest corner. In that corner, Lenard observed a window covered with what appeared to be wood or insulated material and sealed with duct tape. Lenard testified that he could smell growing marijuana plants "really strong" in an area near the window as he walked past it.

Lenard then left with the other two detectives, returned to Bozeman and prepared paperwork to procure a search warrant. After obtaining the search warrant the next morning, Lenard and Tymrak returned to the defendant's residence with the search warrant. As a result of the search, the detectives found and seized horn and antler pipes found throughout the residence, a "baggy" containing marijuana that was found on a table, fourteen marijuana plants, and a hospital bill from the bedroom area addressed to Robert L. Holstine to show that defendant was living at the address and receiving mail there.

The marijuana plants were dried and then submitted to the Montana State Crime Lab, which confirmed that the substance was 159.5 grams of marijuana. Defendant moved to suppress the evidence

4

obtained as a result of an illegal search. After a suppression hearing and a bench trial, the District Court denied the motion to suppress and found the defendant guilty of possessing more than 60 grams of marijuana, a felony, under § 45-9-102, MCA, and not guilty of manufacture of drug paraphernalia, a misdemeanor. This appeal followed.

Although the defendant argued extensively that the evidence found should have been suppressed because it was obtained by a ruse, we decline to address that issue. There was a total absence of relevant evidence gained by Detective Lenard's ruse entry into defendant's residence. Because the officers did not rely on any information gained by the ruse entry to support probable cause to obtain the search warrant, there was no evidence which could be classed as gained by deceptive entry. The sole issue for our review, therefore, is whether there was sufficient probable cause for a search warrant to issue.

This Court has adopted the "totality of the circumstances" test from Illinois v. Gates (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, for assessing the issue of probable cause for the issuance of a search warrant. See State v. Campbell (1992), 254 Mont. 425, 427, 838 P.2d 427, 429. Our function is not to review de novo the magistrate's determination that probable cause existed to issue a search warrant. State v. Baldwin (1990), 242 Mont. 176, 183, 789 P.2d 1215, 1220. Rather, our duty is to "ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Gates, 462 U.S. at 238-39, 103 S.Ct. at

5

2332, 76 L.Ed.2d at 548. Moreover, as a reviewing court, we should attach great deference to the magistrate's determination of probable cause. Campbell, 838 P.2d at 429.

The information provided to Detective Tymrak by the confidential informant was information the informant had received by firsthand observation. The informant provided detailed information on the defendant's marijuana grow operation. The informant explained the location of the residence, the layout of the mobile home and its built-on addition and the location within the mobile home where the marijuana was growing. The informant also told Tymrak that he had observed the marijuana plants growing in a room in the southwest corner of the residence. Although the informant knew the defendant only as "Cutter Bob," the informant gave detailed descriptions of the defendant and the defendant's vehicle. Further, the affidavit signed by Detective Lenard stated that the confidential informant had provided law enforcement with reliable information in the past. In Gates, the United States Supreme Court commented on an informant's personal observation, stating that "his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitled his tip to greater weight than might otherwise be the case." Gates, 462 U.S. at 234, 103 S.Ct. at 2330, 76 L.Ed.2d at 545.

Although a reliable confidential informant's information is entitled to greater weight under the "totality of the circumstances" test than an informant who has not demonstrated

6

reliability, such information alone may be insufficient to establish probable cause. The "totality of the circumstances" test from <u>Gates</u> provides:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

<u>Gates</u>, 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548.

"The totality of the circumstances test is fact specific." State v. Valley (1992), 252 Mont. 489, 830 P.2d 1255, 1257 (quoting State v. Olson (Minn. 1989), 436 N.W.2d 92). The factors supporting probable cause must not be stale and they must indicate that the contraband or evidence would presently be at the place searched. In <u>Valley</u>, we stated that "[c]ommon sense dictates further investigation" to verify or corroborate the tips received from informants. <u>Valley</u>, 830 P.2d at 1257.

The detectives here acted upon the information provided by the confidential informant the same day they received the tip, driving to the Big Sky area to verify that the description of the location and physical characteristics of the residence were as described by the informant. However, this Court has previously stated that facts of a description and location of property, while easily confirmable by a driveby, can hardly be regarded as probative of the probability of the presence of contraband therein. <u>Valley</u>, 830 P.2d at 1258.

7

Factors which are of little probative value alone, however, when taken together under the Gates "totality of the circumstances" test, provide the basis for a determination of substantial evidence to conclude probable cause existed to issue the search warrant. Campbell, 838 P.2d at 429. In this case the detectives next contacted other law enforcement officers who regularly worked in the Big Sky area and determined that "Cutter Bob" was defendant Robert L. Holstine. They further determined that Holstine had previously been charged with possession of drug paraphernalia.

Although these were all above-board means of verification, the officers did not believe they had obtained sufficient information to obtain a search warrant. Lenard then posed as a skier to obtain entrance to defendant's residence to use the telephone. This ruse entry into the residence provided no information about the marijuana grow operation.

When Lenard walked behind the mobile home for the purpose of propping his skis against it, he observed that a window in the southwest corner of the residence was covered over and emitting no light, although numerous other windows were emitting light. Lenard testified that from his experience and training, he knew that it was common practice for windows to be covered to conceal the light sources for growing marijuana. Also behind the mobile home, Lenard smelled a "strong, pungent odor" that he identified from his experience as the odor of growing marijuana. At the time the search was conducted, it was discovered that the odor was coming

8

from a ceiling vent in the room where the marijuana grow operation was located.

An application for a search warrant must contain a showing of facts sufficient to establish that there is probable cause to believe that contraband or evidence is to be found at the place to be searched at the time the warrant is issued. Valley, 830 P.2d at 1257. We conclude that the information Lenard obtained by walking to the southwest area of the residence, along with the information provided by the confidential informant and verified by law enforcement, was sufficient to establish probable cause to obtain a search warrant in this case.

Defendant also argues that Detective Lenard's affidavit supporting issuance of the search warrant contains incorrect facts which, according to this Court's prior decisions, cannot be used to establish probable cause. See, e.g., State v. Wilson (1992), 254 Mont. 317, 837 P.2d 1346; Valley, 830 P.2d 1255; and State v. Nanoff (1972), 160 Mont. 344, 502 P.2d 1138. Specifically, defendant contends that Lenard could not actually smell any growing marijuana plants, that he "just knew they existed," and that he fabricated the smell of the plants in order to obtain the search warrant. Defendant contends that Lenard changed his story when it was later determined that the odor was in fact emitting from a ceiling vent, not the sealed-off window.

Defendant did not make the argument that the application for the search warrant contained false information at the time of the suppression hearing as required by § 46-13-302(1), MCA. He raised

9

this issue for the first time in a supplemental brief filed on July 30, 1991, two weeks after the trial and hearing. Defendant's primary argument at the concurrent suppression hearing and trial was that consent to enter the residence was coerced under the guise of deception. Defendant bases his contention that Lenard fabricated information to establish probable cause for a warrant on Lenard's statements that he could smell the odor of growing marijuana outside the residence.

Defendant places great emphasis on Lenard not knowing that the window was sealed off and that the odor actually came from a ceiling vent and not from the window. Lenard's affidavit does not state that Lenard believed the odor of growing plants was coming from the window. He testified that he did not stop to sniff and smell--that he walked to the area, propped his skis against the residence and then left the premises. Detective Lenard stated in his investigative report dated February 15, 1991:

> I walked underneath the window and could detect an odor in that area. The odor was very pungent. I recognized the odor from past search warrant executions as the odor of growing marijuana plants.

In his affidavit in support of the application for a search warrant, also dated February 15, 1991, Lenard stated:

> One window located in the southwest corner appeared to be covered over. Also a strong, pungent odor was present. From experience your affiant identified the odor as growing marijuana.

Lenard testified at trial as follows:

> Q: And did you sense or observe any such information [to further substantiate the information given by the confidential informant]?

10

A: Yes. The information from the confidential informant stated that the grow was in the southwest corner of the trailer. As I walked by that area, I observed a window that was covered over with what appeared to be wood or insulated material. As I walked past the area -- this was in February and there was waist-deep snow everywhere around the trailer. Everything was real icy and cold. I could detect an odor of growing plants, like a greenhouse, same sort of smell. It was real strong in one area. The one area was the area where the confidential informant said the grow was.

Q: How long would you say you spent then behind that trailer, or in that area there by the trailer where you left your skis?

A: I kept moving the whole time. I didn't stop and sniff or stare around or look around. I walked and put the skis back and I walked back through. As I walked past the window the first time, I could detect the odor. As I walked back again, it was the same area. It wasn't spread out through the whole side of the trailer, just the one area that was contained.

. . . .

Q: And it was your testimony that you smelled growing marijuana plants through the window along the side of the trailer?

A: Yes.

Q: Were you aware or did you become aware subsequently what was on that window?

A: I think they call it construction board. It's a sort of insulated board you use for cork board sometimes. It was sealed with duct tape.

. . .

Q: Yet you smelled growing marijuana plants through that sealed window?

A: When we did the search warrant, the reason I could smell the growing marijuana was that there was a large vent in the ceiling of the trailer. Vents are frequently used in grow operations to vent the heat so the plants don't overheat. The area where I could smell the marijuana was directly beneath the vent.

. . . .

11

Q: -- yet outside at night in winter time, through a sealed window, your testimony is that you could smell the very same plants that you couldn't smell from the inside?

A: No. I think my testimony was that I could smell the marijuana through the vent that was venting the room, not through the sealed window. And possibly the reason I could not detect the smell of the growing marijuana in the trailer was that the vent was venting the smell outside.

From a careful review of this and other testimony and documents in the record, we conclude there is nothing therein to support the defendant's claim that Detective Lenard fabricated a story about the odor of growing marijuana plants near the southwest corner of the defendant's residence in order to get a search warrant. We conclude that the District Court did not err in finding that "Lenard noted a covered window and detect[ed] the odor of growing majijuana [sic] coming from a vent."

We hold there was a substantial basis for the District Court to conclude that probable cause existed for the issuance of the warrant to search defendant's residence.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

12

Justice William E. Hunt, Sr., dissenting.

I dissent. I agree with defendant's argument that the evidence should have been suppressed because it was obtained by a ruse. As the majority points out, the deputy, by a pretense of needing help, which was given to him by defendant, determined after being in the house and outside of the house, that marijuana was being grown on the premises. The search warrant was not issued until after the deputy and two detectives returned to Bozeman and prepared the paperwork to obtain a search warrant. The majority skips over the episode and hangs their ruling on the fact that there was enough evidence for the warrant anyway. This is a tainted search that took advantage of a willingness to help a stranded motorist which supplied the information for law enforcement officials to obtain a warrant.

I would grant the motion to suppress the evidence.

_William E. Hunt_
Justice

13

September 13, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Stuart R. Whitehair
Attorney at Law
P.O. Box 6493
Bozeman, MT  59715

Hon. Joseph P. Mazurek
Attorney General
Justice Bldg.
Helena, MT  59620

A. Michael Salvagni, County Attorney
Marty Lambert, Deputy
615 S. 16th
Bozeman, MT  59715

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy