No. 97-032

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 130


STATE OF MONTANA,

Plaintiff and Respondent,

v.

LYLE R. OLESON,

Defendant and Appellant.


APPEAL FROM:   District Court of the Seventh Judicial District,
In and for the County of Richland,
The Honorable Richard G. Phillips, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Peter O. Maltese, Sidney, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Cregg W. Coughlin,
Assistant Attorney          General, Helena, Montana; Mike Weber,
Richland County Attorney, Sidney,          Montana


Submitted on Briefs: December 11, 1997

Decided: May 28, 1998
Filed:


_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal by Defendant Lyle R. Oleson (Oleson) from a September 15, 1995 order of the Seventh Judicial District Court, Richland County, denying his motion to suppress evidence. We affirm.

BACKGROUND

On February 28, 1995, the Richland County Attorney filed an Information in the Seventh Judicial District Court, Richland County, charging Oleson with one count of criminal possession of dangerous drugs, a felony, in violation of 45-9-102, MCA, and with one count of criminal possession of dangerous drugs with intent to sell, a felony, in violation of 45-9-103, MCA. These charges resulted from the seizure of twenty-five packets of methamphetamine, money, and records of drug transactions following a search of Oleson's home on February 22, 1995, and from Oleson's possession of an additional amount of methamphetamine found on his person during the booking search after his arrest.

The search of Oleson's home, his subsequent arrest and the seizure of the subject evidence followed the execution of a search warrant obtained by Montana Fish and Game Warden, Coy Kline, based on a citizen informant's tip implicating Oleson in unlawful game spotlighting and poaching.

Oleson moved pretrial to suppress the evidence seized during the execution of the search warrant on his home, and, following a hearing, the District Court denied Oleson's motion. Subsequently, Oleson entered pleas of guilty to both counts in the Information, reserving his right to appeal the District Court's denial of his suppression motion.

ISSUE

The sole issue raised on appeal is whether the District Court erred in denying Oleson's motion to suppress evidence.

DISCUSSION

On appeal, Oleson argues that the issuing magistrate, Richland County Justice of the Peace, Greg Mohr, erred in concluding that the application for search warrant established probable cause for the issuance of the warrant. We disagree.

The standard of review for both this Court and the District Court which ruled on Oleson's motion to suppress is the same. "The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause to issue a search warrant existed." State v. Jensen (1985), 217 Mont. 272, 276, 704 P.2d 45, 47 (citing State v. Erler (1983), 207 Mont. 88, 93, 672 P.2d 624, 627). "To address the issue of probable cause for issuance of a warrant, this Court has adopted the 'totality of the circumstances' test set forth in Illinois v. Gates (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527." State v. Rinehart (1993), 262 Mont. 204, 210, 864 P.2d 1219, 1222 (quoting State v. Crowder (1991), 248 Mont. 169, 173, 810 P.2d 299, 302). "A determination of probable cause does not require facts sufficient to make a prima facie showing of criminal activity. Rather, the

issuing magistrate must only determine that there is a probability of criminal activity." Rinehart, 262 Mont. at 210, 864 P.2d at 1222 (citing State v. O'Neill (1984), 208 Mont. 386, 394-95, 679 P.2d 760, 764; State v. Sundberg (1988), 235 Mont. 115, 119, 765 P.2d 736, 741).

> "In dealing with probable cause . . . , as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

Rinehart, 262 Mont. at 210, 864 P.2d at 1222-23 (quoting Brinegar v. United States (1949), 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1890, reh'g. denied 338 U.S. 839, 70 S.Ct. 31, 94 L.Ed. 513. The magistrate's determination that probable cause exists for the issuance of the search warrant must be paid great deference by a reviewing court; this function does not constitute a de novo review of the magistrate's determination. State v. Johnston (1995), 271 Mont. 385, 388, 897 P.2d 1073, 1075; Rinehart, 262 Mont. at 210, 864 P.2d at 1223; State v. Baldwin (1990), 242 Mont. 176, 183, 789 P.2d 1215, 1220.

8    An affidavit supporting a search warrant is to be interpreted by the magistrate and examined by the reviewing court in a common sense, realistic fashion and without a grudging or negative attitude that will tend to discourage police officers from seeking warrants. Moreover, the reviewing court should avoid hyper-technical interpretations of warrant applications and, in doubtful or marginal cases, resolve the issue with the preference for warrants in mind. Rinehart, 262 Mont. at 210-11, 864 P.2d at 1223 (citing O'Neill, 208 Mont. at 394-95, 679 P.2d at 764). All reasonable inferences possible should be drawn to support the issuing magistrate's determination of probable cause. Rinehart, 262 Mont. at 211, 864 P.2d at 1223 (citing Sundberg, 235 Mont. at 123, 765 P.2d at 741; State v. Rydberg (1989), 239 Mont. 70, 73, 778 P.2d 902, 904). A reviewing court must presume the magistrate properly issued the search warrant after subjecting the application to the totality of the circumstances test. State v. Deskins (1990), 245 Mont. 158, 162, 799 P.2d 1070, 1072; Baldwin, 242 Mont. at 183, 789 P.2d at 1220; Sundberg, 235 Mont. at 122-23, 765 P.2d at 741. Finally, probable cause is generally determined solely from the information contained within the four corners of the search warrant application. Rinehart, 262 Mont. at 211, 864 P.2d at 1223 (citing State v. Isom (1982), 196 Mont. 330, 341, 641 P.2d 417, 423; O'Neill, 208 Mont. at 393, 679 P.2d at 763-64.

9    With these legal principles in mind, we turn to the application for search warrant. Game Warden Kline's application for search warrant stated his belief that Oleson had committed several offenses involving unlawfully killing big game in violation of specified sections in Title 87, Chapter 3, Part 1, MCA. The application further stated that Kline believed that contraband and/or evidence of the offenses would be found in Oleson's residence which was specifically described in the application and in a green Chevrolet pickup with Montana license plates "RIG PIG" located in Richland County. Kline's application sought a warrant to search Oleson's premises for the purpose of seizing deer meat, deer parts, .22-250 caliber guns, .22-250 caliber ammunition, spotlights, saws, knives, photographs, and any unlawfully taken big game meat and/or parts and any other evidence related to the crimes.

¶10 Kline's application then went on to state the factual basis for his application as follows:

1. On February 14, 1995 at 0336 hours, a confidential Informant (CI) who wishes to remain anonymous contacted the Richland County Sheriff's Department concerning a spotlighting incident.

2. On February 18, 1995 I contacted the CI.

3. CI stated that at about 3:00 A.M. on the 14th, a pickup truck drove east on County Road 129 towards the Yellowstone River.

4. CI stated lights were shining from the truck into the fields. CI heard a shot from the vicinity of the pickup.

5. CI stated the truck came back up the road where CI observed Montana License plate "RIG PIG" on the truck.

6. The Richland County Sheriff's Department used the CJIN terminal to determine the Registered owner of Montana license plate "RIG PIG". The registered owner is Lyle and Rita Oleson.

7. Bob Burnison (Sidney, Montana Police Department Captain) told me that Lyle Oleson lives at 615 5th Street Southeast, Sidney, Montana.

8. On February 19, 1995, I went to the site on Richland County Road 129 and collected a .22-250 caliber shell casing along the road.

9. I found a patch of deer hair in the drainage ditch within ten feet of the shell casing.

10. I also observed one set of foot prints near the shell casing.

11. I know from personal experiences that deer frequent this area at night.

Your affiant has been a peace officer for 7 years and has attended over 500 hours of law enforcement training and education, much of which has involved the detection and investigation of wildlife related crimes. Based upon your affiant's experience and education, he knows that persons who spotlight, shoot from the road, and do it late at night often use small caliber firearms such as a .22-250 to conceal the report of the gun.

¶11 Applying the above-stated, well-established, standards of review to Judge Mohr's determination to issue the search warrant, we conclude, as did the District Court, that under the totality of the circumstances test, Game Warden Kline's application established sufficient probable cause to issue a warrant to search Oleson's premises.

12 Notwithstanding, and as he did in District Court, Oleson engages in a technical dissection of the search warrant application suggesting that this Court make various assumptions about the evidence presented to the magistrate and to accept his offer of seemingly innocent explanations for the suspicious conduct which the confidential informant reported to the authorities. We decline to do so. As the United States Supreme Court pointed out in Gates in holding that its earlier observations with regard to "particularized suspicion" were applicable to probable cause:

> "The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same--and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."

Gates, 462 U.S. at 231-32, 103 S.Ct. at 2328-29, 76 L.Ed.2d at 544 (quoting United States v. Cortez (1981), 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621).

13 Oleson also suggests that the citizen's information as reported to law enforcement was unreliable. Again, we disagree. While the warrant application stated that the informant wished to remain anonymous, the application also indicated that Game Warden Kline contacted the citizen thus establishing the informant's identity to the officer. Furthermore, the informant's information was clearly based upon his own personal observation of Oleson's pickup, the spotlight being shown in the field, and the informant's hearing a shot being fired from the vicinity of the pickup, and the pickup returning to the road.

14 Aside from the fact that we do not out-of-hand disapprove of anonymous tips as one element in determining whether probable cause exists for issuing a search warrant, State v. Cain (1986), 220 Mont. 509, 515-16, 717 P.2d 15, 19, information which is supplied to law enforcement motivated by good citizenship is accepted as reliable for purposes of determining probable cause to issue a search warrant. State v. Crain (1986), 223 Mont. 167, 169-70, 725 P.2d 209, 211; Jensen, 217 Mont. at 277, 704 P.2d at 48. Finally, as indicated in the application, Game Warden Kline also corroborated the informant's information by subsequent investigation even though corroboration of an informant's information through other sources is generally necessary only when the information is hearsay or the

informant
is anonymous.  See State v. Siegal (1997), 281 Mont. 250, 281, 934 P.2d 176, 194.

15  Oleson also argues that, even assuming that there was probable cause to believe that
the various game offenses had been committed, there was no reason to believe that evidence
of these crimes would be found at his residence.  In support of his argument he cites our
decision in State v. Kaluza (1993), 262 Mont. 360, 865 P.2d 263.  Oleson's reliance on
Kaluza is misplaced, however.  In that case, the issue was whether there was probable cause
to search at all, not whether there was a sufficient nexus between probable criminal activity
and the place sought to be searched.  While there must be a logical nexus between the
alleged illegal activity and the place to be searched, this nexus need not be supplied by direct
observation.  Rather, the necessary connection rests upon the type of crime, the nature of the
contraband or evidence sought, the extent of the suspect's opportunity for concealment, and
the natural inferences to be drawn as to where a criminal would be likely to hide the
contraband.  State v. Pease (1986), 222 Mont. 455, 465, 724 P.2d 153, 159 (citing United
States v. Spearman (9th Cir. 1976), 532 F.2d 132).  In the case at bar, it was certainly
reasonable for Judge Mohr to conclude that evidence pertaining to criminal offenses
involving unlawful spotlighting and killing of big game might well be found in the alleged
perpetrator's home, garage or vehicle which was observed at the scene of the offense.

16  In connection with the pickup, Oleson claims that the search of his vehicle was
unlawful since the search warrant did not authorize the officer to search there.  In fact, the
search warrant only authorized the search of Oleson's residence and garages.  However, this
argument is irrelevant.  Any evidence of game violations seized from Oleson's truck has no
bearing on the drug related crimes to which he was charged and pleaded guilty.

17  Additionally, Oleson argues that the officers secured the search warrant at issue here
merely as a ruse to search his home for drugs.  While the District Court did not specifically
address this claim, there is simply no persuasive support in the record for Oleson's
conspiracy theory.

18 Finally, Oleson's argument that the search exceeded the scope of that permitted by the
warrant is without merit.  The drugs, cash and drug records were found in an area of

the basement of Oleson's home where any of the items named in the search warrant could have been found.  The officers did not exceed the scope of the search warrant but, rather, discovered the drugs and other drug related evidence in plain view in areas authorized to be searched for the game violation items specifically referred to in the search warrant.  See State v. Loh (1996), 275 Mont. 460, 473, 914 P.2d 592, 600 (seizure of property in plain view involves no invasion of privacy providing that the incriminating character of the object is immediately apparent; the officer is lawfully located in a place from which the object can be plainly seen; and the officer has a lawful right of access to the object itself).

 19  In summary, based upon the standards of review articulated earlier in this Opinion, we conclude, as did the District Court, that Judge Mohr had a substantial basis for concluding that probable cause existed to issue a search warrant upon application of Game Warden Kline.  We hold that the District Court did not err in denying Oleson's motion to suppress evidence.

 20  Affirmed.

/S/   JAMES C. NELSON

We Concur:

/S/  J. A.  TURNAGE
/S/  JIM REGNIER
/S/  TERRY N. TRIEWEILER
/S/  W. WILLIAM LEAPHART