No. 99-142

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 243

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JOHN REESMAN,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Mike Salvagni, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jennifer Wendt Bordy, Bozeman, Montana

For Respondent:

Joseph P. Mazurek, Montana Attorney General, Jennifer Anders, Assistant Montana Attorney General, Helena, Montana; Marty Lambert, Gallatin County Attorney, Jane Mersen, Deputy Gallatin County Attorney, Bozeman, Montana

Heard: May 1, 2000

Submitted: June 1, 2000

Decided: September 11, 2000

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 John Reesman (Reesman) appeals from two orders issued by the Eighteenth Judicial District Court, Gallatin County, which denied his motion to suppress evidence, and denied his motion to dismiss based on destruction of evidence.

¶2 We reverse and remand for further proceedings consistent with this opinion.

¶3 Reesman raises the following issues on appeal:

> 1. Did the District Court err when it denied Reesman's motion to suppress evidence seized as the result of an illegal search?

> 2. Did the District Court err when it denied Reesman's motion to dismiss the charges because the State destroyed evidence?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 During the search of a trailer home located in Big Sky, Montana, in which Gallatin County Sheriff's officers believed marijuana was growing in a bedroom closet, more than 100 "hits" of LSD were found in another bedroom where the Appellant Reesman lived. The search was conducted pursuant to a search warrant allegedly validated by the statements of a confidential informant and corroborated by information received from an "anonymous citizen."

¶5 Reesman's motion to suppress the evidence gathered in his bedroom as well as his testimony to the officers was heard by the District Court on July 24, 1998. The following factual scenario was set forth in the warrant application and testified to at the hearing.

¶6 On November 28, 1995, a confidential informant provided Gallatin County Detective Don Hanson (Hanson) with first-hand information concerning a variety of illegal drug-related activity at a trailer home located in Big Sky, Montana. Hanson was assigned at the time to the Missouri River Drug Task Force. The warrant application did not indicate whether the informant had provided law enforcement officers with accurate information regarding criminal activity in the past.

¶7 The informant stated that a person named Brent Hoge, or "Beau Dylan Hogge" answered the door,

and escorted her to his bedroom located at the north end of the trailer. There, he allegedly revealed marijuana growing in a closet, as well as recently harvested "buds." According to the informant, he also showed her spore-like growth in a styrofoam cup, which he claimed were mushrooms that produce the illegal hallucinogen, psilocybin. These described events allegedly took place, according to the informant, on the weekend of October 28, 1995. The informant did not give information that any other person was conducting illegal activity of any type in the trailer, and she did not mention Reesman by name, or indicate that he was living in the trailer.

¶8 Hanson also testified that an "anonymous citizen," who had provided reliable information in the past, told him that the marijuana growing operation had existed at that location for approximately one year. This information was included in the application. The application omitted, however, further detail as to whether this informant's information came from personal observation, or under what context law enforcement personnel had received the prior reliable information.

¶9 According to testimony, neither Hanson nor any other law enforcement officer took further steps to corroborate the information supplied by the informant and anonymous citizen other than, apparently, confirming that a trailer as described by the informants was located at the given address. Hanson testified that he attempted to learn more about other residents at the trailer through telephone records, power records, and vehicles at the residence. Despite these efforts, he was unable to ascertain who owned the trailer, and no information concerning any such records was included in his application for the search warrant.

¶10 Nevertheless, Hanson applied for and obtained a search warrant for the entire trailer two days later on November 30, 1995. On that same day, at approximately 11:40 a.m., the search warrant was executed by Hanson and other officers. Four persons were found in the trailer, including Reesman, as officers commenced gathering evidence pursuant to the search warrant.

¶11 Hanson advised Reesman of his constitutional rights pursuant to *Miranda*, and interviewed him in his bedroom. During this interview two other officers searched Reesman's bedroom. Reesman signed a written "waiver of rights" form at that time, which gave the officers permission to conduct the search. The waiver form expressly included the entire residence. Reesman would contend that in signing the waiver, he believed he was only consenting to a search of his vehicle. Hanson's report, in fact, stated that he obtained only Reesman's consent to search the vehicle. Reesman testified that he did not understand the consent form at the time, and would not have consented to the search of his bedroom if he had been given the option. Although the waiver was sought, Hanson maintained that the original warrant validly provided that officers could search the entire trailer.

¶12 The initial search of Reesman's bedroom produced 13 hits of LSD. Reesman then told the officers where more could be found in his room. The officers found an additional 110

hits of LSD.

¶13 On May 22, 1998, Reesman moved to suppress the evidence found in his bedroom, as well as his statements made to officers at the time, claiming that the search warrant issued for the entire trailer lacked probable cause, and that it was overbroad. At that time, Reesman pled not guilty to one count of criminal possession of dangerous drugs with intent to sell, a felony, and criminal possession of drug paraphernalia, a misdemeanor.

¶14 Following the July 24, 1998 hearing, the District Court issued its Findings of Fact, Conclusions of Law, and Order. The court followed the well-established Montana rule that the determination of whether there was sufficient probable cause for a court to issue a search warrant must follow the "totality of the circumstances" test.

¶15 The court determined that corroboration of the confidential informant's first-hand, detailed information by an anonymous tip weighed heavily in favor of the informant's reliability, and therefore concluded that there was a substantial basis upon which the issuing court found probable cause for the search warrant. The court stated, in its conclusions of law, that "[t]he application for the search warrant provided sufficient probable cause that criminal activity was occurring at the residence named in the caption."

¶16 The court also determined that Reesman's consent was, ultimately, immaterial in that the original search warrant covered the entire residence, including Reesman's bedroom. Even so, the court concluded that "the consent was sought to only search the vehicle."

¶17 Reesman ultimately pled guilty, pursuant to a plea agreement, to one count of criminal possession of dangerous drugs, which is a felony offense. He received a suspended sentence of three years. Reesman appealed the District Court's order denying his motion to suppress evidence, as well as a denial of a motion to dismiss based on destruction of evidence. This matter was heard at oral argument on May 1, 2000.

## STANDARD OF REVIEW

¶18 The standard of review of a district court's denial of a motion to suppress is whether the court's findings of fact are clearly erroneous. *See State v. Kuneff*, 1998 MT 287, ¶ 6, 291 Mont. 474, ¶ 6, 970 P.2d 556, ¶ 6 (citing *State v. Siegal* (1997), 281 Mont. 250, 257, 934 P.2d 176, 180). Further, the standard of review of a district court's denial of a motion to suppress is whether the court's interpretation and application of the law is correct. *See*

*State v. Hubbel* (1997), 286 Mont. 200, 207, 951 P.2d 971, 975 (citation omitted).

¶19 Finally, this Court's function as a reviewing court is to ultimately ensure that the magistrate or the lower court had a "substantial basis" to determine that probable cause existed. *State v. Crowder* (1991), 248 Mont. 169, 173, 810 P.2d 299, 302. It is critical in our review, however, that a magistrate's determination that probable cause exists be paid great deference and every reasonable inference possible be drawn to support that determination. *State v. Rinehart* (1993), 262 Mont. 204, 211, 864 P.2d 1219, 1223 (citations omitted).

## DISCUSSION

¶20 Reesman claims that, from a number of legal angles, the search warrant issued in this instance must be viewed as "fatally" defective, and that due to the destruction of evidence, the District Court erred by not dismissing this case. We conclude that the issue of whether the information supplied by the informants was sufficient to establish probable cause is dispositive, and we therefore narrow our review without reaching the other issues raised by Reesman.

¶21 Furthermore, the State concedes that, in light of the District Court's findings and conclusions, Reesman did not validly consent to a search of his bedroom and thus the signed waiver was ineffective. Therefore, if information provided in the application for the search warrant did not provide a substantial basis for a probable cause determination, the District Court's denial of Reesman's motion to suppress evidence must be reversed. Accordingly, we address the following issue, which we restate as follows:

*Issue*

***Did the District Court err by concluding that the application for a search warrant, which provided a confidential informant's information supplied to law enforcement officers as well as corroboration by an anonymous citizen, created a substantial basis upon which a magistrate could determine probable cause?***

¶22 The District Court concluded that "[t]he application for the search warrant provided sufficient probable cause that criminal activity was occurring at the residence named in the caption." Reesman points to the fact that the information provided by the confidential informant found in the application was corroborated only by an "anonymous citizen," and

not by further independent police investigation. The reliability of the "anonymous" citizen, in turn, was not corroborated by any further independent investigation. Thus, he contends, the warrant application clearly failed to establish probable cause pursuant to Montana's case law grounded in the *Gates* totality of the circumstances test.

¶23 Although conceding that law enforcement personnel did not personally take action to independently corroborate the two informants' information, the State argues that the confidential informant had personal knowledge of the marijuana growing operation in Hogge's bedroom, and her information was independently corroborated by a citizen informant who had given reliable information in the past and who reported that the marijuana growing operation seen by the confidential informant had been in effect for nearly a year. The State contends that, taken as a whole, the combination of this information is sufficient standing alone to establish probable cause for the search warrant under the totality of the circumstances test.

¶24 The core question here, therefore, is the sufficiency of the application for a search warrant. An application for a search warrant must state facts sufficient to show probable cause for the issuance of the warrant. *See* § 46-5-221, MCA; *State v. Kuneff*, 1998 MT 287, ¶ 21, 291 Mont. 474, ¶ 21, 970 P.2d 556, ¶ 21. To address the issue of probable cause for issuance of a warrant, this Court follows the "totality of the circumstances" test set forth in *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. *See State v. Crowder* (1991), 248 Mont. 169, 173, 810 P.2d 299, 302. Under this test, to determine whether a search warrant should be issued, the judge evaluates the facts asserted within the four corners of the application and makes a practical, common-sense decision as to whether there is a fair probability that incriminating items will be found in the place to which entry is sought. *See State v. Worrall*, 1999 MT 55, ¶ 28, 293 Mont. 439, ¶ 28, 976 P.2d 968, ¶ 28 (citing *State v. Sundberg* (1988), 235 Mont. 115, 119, 765 P.2d 736, 739)

¶25 As a reviewing court, we too must look solely to the information given to the impartial magistrate and to the four corners of the search warrant application. *See Crowder*, 248 Mont. at 173, 810 P.2d at 302 (citing *Sundberg*, 235 Mont. at 121, 765 P.2d at 740). We have often stated, however, that in so doing we must refuse to review a search warrant application sentence by sentence; rather, we must examine the entire affidavit to determine whether the issuing magistrate had a substantial basis to conclude that probable cause existed. *State v. Hulbert* (1994), 265 Mont. 317, 323, 877 P.2d 25, 29 (citation omitted).

¶26 By no means is the issue raised here novel. Yet, as evidenced by the parties' briefs as well as their oral arguments before this Court, our case law as a whole creates an appearance of convolution. The cases cited by both parties reveal a broad spectrum of factual scenarios where information is provided by "anonymous" informants who have personally witnessed criminal activity and "confidential" informants who have not, but are nevertheless deemed "reliable"-- or vice versa. Often "concerned citizens" offer information regarding what they have seen or heard regarding actual criminal activity, or merely what they regard as suspicious activity. At the receiving end of such information are law enforcement officers who may choose to follow up on these tips and interviews, utilizing a variety of investigatory tools. Eventually, the "totality" of the gathered information may be drafted into an application for a search warrant, and, at some point, a threshold is crossed: the independent magistrate, based on the information contained within the four corners of the application determines that, yes, probable cause exists and a citizen's person or property may be searched by law enforcement officers.

¶27 Upon closer review, however, a synthesis of our case law chalks a fairly uniform equation for determining whether an informant's statements, without further law enforcement corroboration or investigation, are sufficient to establish probable cause. True, we must observe the underlying principle of the *Gates* test, that this "totality of the circumstances approach" by design resists "any rigid demand that *specific tests* be satisfied by every informant's tip." *State v. Kelly* (1983), 205 Mont. 417, 439, 668 P.2d 1032, 1044 (quoting from *Illinois v. Gates*) (emphasis added). Nevertheless, based on 17 years of precedent laid down by this Court since we adopted the *Gates* test in *Kelly* and *State v. O'Neill* (1984), 208 Mont. 386, 679 P.2d 760, certain indelible threshold rules have emerged. In turn, these rules may be merged into a fairly coherent step-by-step analysis for determining whether an informant's information is sufficient to establish probable cause.

## A. *The anonymous informant*

¶28 First, a threshold question may be asked: is the informant anonymous? This means that law enforcement officers have no idea who is providing the information. A phoned-in Crimestoppers "tip" is one frequent, common example. If the answer is yes, then independent corroboration of the informant's information is required. This Court has routinely stated that "[c]orroboration of an informant's information through other sources is necessary when the information is hearsay or the informant is anonymous." *State v. Rinehart* (1993), 262 Mont. 204, 211-12, 864 P.2d 1219, 1223-24 (concluding that an "anonymous Crimestoppers' tip, by itself, is not adequate to support probable cause without further investigation to verify or corroborate the information

contained in the tip," and citing *State v. Valley* (1992), 252 Mont. 489, 493, 830 P.2d 1255, 1257).[(1)]

## B. Personal observation

¶29 f the informant is not anonymous, we may then proceed to a second threshold question: is the informant's information based on his or her personal observation of the described criminal activity? In other words, is the basis of the information hearsay? *See Rinehart*, 262 Mont. at 212, 864 P.2d at 1224 (stating that an "informant's personal observation of criminal activity does not constitute hearsay evidence"); *State v. Kaluza* (1995), 272 Mont. 404, 411, 901 P.2d 107, 111 (concluding that informants' information in warrant application contained no reference to personal observation or personal knowledge, and was therefore of "no value"). *See also State v. Wilson* (1992), 254 Mont. 317, 319, 837 P.2d 1346, 1347 (concluding that "bare assertion" of personal observation of marijuana growing in defendant's house failed to sufficiently describe the interior of the house and the location of the marijuana growing operation).

¶30 If the answer is no, then again independent corroboration is required.

## C. Reliability

¶31 If the information of actual criminal activity was gleaned from the personal observations of a non-anonymous person, then we may proceed to a final threshold question: is the informant a reliable source of such information? This question, in turn, breaks down into three clearly identifiable scenarios within our search and seizure jurisprudence.

## 1. The confidential informant

¶32 If an informant is identified in a law enforcement officer's application for a search warrant as a "confidential informant," he or she must have provided reliable and accurate information to officers in the past in order for the information to serve as a basis for determining probable cause without further corroboration. This Court has held that a "sworn statement [by a law officer] that an informant has been reliable and provided accurate information on other occasions is sufficient to establish that the informant is reliable." *Kaluza*, 272 Mont. at 410, 901 P.2d at 111 (citations omitted). *See also Rinehart* , 262 Mont. at 212, 864 P.2d at 1223-24 (concluding that a search warrant

application provided a substantial basis to conclude probable cause existed to issue the search warrant based on officer's statement that informant was reliable in the past); *State v. Walston* (1989), 236 Mont. 218, 223, 768 P.2d 1387, 1390 (determining that "information of a criminal activity known from observation by a previously reliable informant . . . is sufficient to establish the probability of criminal activity without outside investigation and verification of the reported information").

## 2. *The admission against interest*

¶33 Alternatively, if the informant makes an unequivocal admission against interest, this Court has likewise held that further corroboration is unnecessary. *See State v. Adams* (1997), 284 Mont. 25, 37, 943 P.2d 955, 962 (concluding that admissions against interest regarding participation in setting up a marijuana growing operation, "without any further corroboration," provided the district court with a substantial basis for concluding that probable cause supported the search warrant). *See also State v. Sundberg* (1988), 235 Mont. 115, 121, 765 P.2d 736, 740 (quoting from *United States v. Harris* (1971), 403 U. S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723, that "[a]dmissions of crime, like admissions against proprietary interests, carry their own indicia of credibility--sufficient at least to support a finding of probable cause to search").

## 3. *The concerned citizen.*

¶34 Finally, if the informant was motivated by "good citizenship" and the information provided demonstrates a sufficient degree of the nature of the circumstances under which the incriminating information became known, then the informant's disclosures are deemed a reliable basis for determining probable cause. This Court has stated that a citizen informant is presumed reliable and such reliability "is generally shown by the very nature of the circumstances under which the incriminating information became known." *State v. Valley* (1992), 252 Mont. 489, 493, 830 P.2d 1255, 1258 (citing *State v. Niehaus* (Iowa 1990), 452 N.W.2d 184, 189). *See also State v. Worrall*, 1999 MT 55, ¶¶ 20-21, 293 Mont. 439, ¶¶ 20-21, 976 P.2d 968, ¶¶ 20-21 (concluding that child witness was reliable in providing information of discovering marijuana growing on defendant's property while snake hunting); *State v. Oleson*, 1998 MT 130, ¶ 14, 289 Mont. 139, ¶ 14, 959 P.2d 503, ¶ 14 (stating that information motivated by good citizenship is accepted as reliable for purposes of determining probable cause to issue a search warrant).

¶35 If the ultimate answer under the foregoing examinations of reliability is no--that the

informant is *not* a reliable source of such information--then once again independent police corroboration is required. If the answer to the question of reliability is yes, then based on the informant's information alone, without corroboration, an application for a search warrant may supply the magistrate with a substantial basis for finding probable cause and, consequently, issuing the search warrant. *See Walston*, 236 Mont. at 223, 768 P.2d at 1390.

¶36 Naturally, the foregoing analysis does not bar a defendant from challenging the warrant on other grounds, such as staleness or the inclusion of incorrect or misleading information in the application for a warrant. Likewise, a defendant may challenge whether the law enforcement officer's independent corroboration or investigation was sufficient within the context of a court's totality of the circumstances analysis. Such corollary grounds, however, are not at issue here.

¶37 In this instance, the confidential informant was not "anonymous," in that she met face-to-face with Detective Hanson, and was subjected to his questioning. Next, her observations, no doubt, were based on personal observations. She stated that she visited the trailer home in question, met with Hogge, and viewed first-hand the marijuana growing in a bedroom closet, describing the trailer home and its interior with sufficient particularity. Thus, the first two threshold steps are clearly satisfied.

¶38 At step three, however, the application for a search warrant did not indicate that as a "confidential informant," the person was known by law enforcement personnel to have been reliable and a source of accurate information in the past, prior to her meeting with Detective Hanson on November 28, 1995. How she became classified by Gallatin County Sheriff's officers as "Confidential Informant (CI) 95-1128" remains a mystery (disregarding, as we must, suppression hearing testimony that provides information beyond the "four corners" of the application originally viewed by the issuing magistrate in this instance). Next, the application did not indicate that the statements were an admission against interest by a co-conspirator or a customer of illegal drugs. Finally, the application simply does not indicate first, that the person was acting as a "concerned citizen," and second, and more importantly, under what circumstances the informant went to and entered the trailer that day and subsequently was shown the incriminating information she later shared with Detective Hanson. Was she there to clean the carpet? Collect rent? Purchase a gram or two of the fresh harvest? Was she acting under law enforcement direction? Why did Hogge so willingly show her his illegal operation? We do not know, and, accordingly, neither did the reviewing magistrate.

¶39 We hold, therefore, that without further, independent corroboration or investigation, the confidential informant's information found within the search warrant application here must fail as supplying the magistrate with the substantial basis necessary for the determination that probable cause existed.

## D. Independent corroboration

¶40 The State nevertheless argues that independent corroboration or investigation of the confidential informant's information *was* supplied to the magistrate in Detective Hanson's application by an "anonymous citizen, who has provided reliable information in the past." At oral argument, the State asserted that under our decisions in *Rydberg*, *Oleson*, and *Deskins*, this Court has a sufficient basis to validate the probable cause showing here. The State further contends that there is "nothing in the [*Deskins*] opinion which suggests that a tip from a citizen informant whose reliability is known to officers cannot serve to corroborate information from a confidential informant unless there is independent corroboration of the citizen's tip as well."

¶41 Indeed, we stated in *Deskins* that "[p]ersonal observation of criminal activity by an informant *whose reliability can be established* provides probable cause." *State v. Deskins* (1990), 245 Mont. 158, 163, 799 P.2d 1070, 1073 (emphasis added). Contrary to the State's argument, however, the corroborating information in *Deskins* was not supplied by another, uncorroborated source of information, but from the independent investigation of a detective. In that case, an anonymous informant supplied investigators with detailed first-hand information of a marijuana growing operation. In turn, officers independently verified that Deskins resided at the home identified by the caller, and proceeded to gather evidence of power consumption records, a synopsis of which was contained in the warrant application. *See Deskins*, 245 Mont. at 162, 799 P.2d at 1072.

¶42 The same factual scenario is present in *Rydberg* and *Oleson*. In both instances, officers took independent action to further corroborate information supplied by the informants. *See State v. Rydberg* (1989), 239 Mont. 70, 73, 778 P.2d 902, 904 (criminal background checks); *Oleson*, ¶ 10 (vehicle registration and criminal scene investigation).

¶43 As a underlying general rule, further independent corroboration or investigation by law enforcement personnel is the panacea for most warrant applications where information is supplied by an informant. In *State v. Walston*, we identified this key element expressed in *Gates*, where the United States Supreme Court determined that an

anonymous letter combined with other police findings established probable cause. We recognized the *Gates* Court's observation that the subsequent investigation conducted by law enforcement personnel verified the facts stated by the informant, which in turn justified the issuing magistrate's conclusion that a probability of criminal activity existed. *See Walston*, 236 Mont. at 222, 768 P.2d at 1389-90. *See also Deskins*, 245 Mont. at 159-60, 799 P.2d at 1071 (anonymous tip corroborated by extensive police investigation); *Crowder*, 248 Mont. at 174, 810 P.2d at 302 (concluding that although information in warrant application combined with officer's investigation was "less complete than would be desirable," it nevertheless served as a sufficient basis for probability that contraband would be found at residence).

¶44 In this sense, "corroboration" or "further investigation" as used throughout the foregoing case law--contrary to the State's argument here--infers independent *police* work of some kind. *See Crowder*, 248 Mont. at 173, 810 P.2d at 302 (quoting *Gates*, 462 U.S. at 241-42, 103 S.Ct. at 2334, 76 L.Ed.2d at 550, and stating that "[t]he United States Supreme Court emphasized the 'value of corroboration of details of an informant's tip by independent *police* work' establishing a 'substantial basis for crediting the hearsay'") (emphasis added). *See also Valley*, 252 Mont. at 493, 830 P.2d at 1257 (stating that "common sense" dictates further law enforcement investigation to verify or corroborate the tips received from informants).

¶45 In fact, our case law offers numerous successful examples of such corroboration or further investigation that established the sufficiency of an informant's information. For example, in *Deskins* the officers through various sources including an investigative subpoena verified home ownership, a business licence, vehicle registration, and utility records indicating increased power consumption after receiving an anonymous tip of a marijuana growing operation. *Deskins*, 245 Mont. at 159-60, 799 P.2d at 1071. Officers have also included in their warrant applications rental information which they have independently verified. *See Adams*, 284 Mont. at 30, 943 P.2d at 958. Numerous cases discuss warrant applications that describe a variety of investigatory drive-bys and visits to a residence to confirm addresses, house descriptions, and other information supplied by informants. *See*, *e.g.*, *State v. Holstine* (1993), 260 Mont. 310, 312-13, 860 P.2d 110, 111-12 (officer observes covered window and smells growing marijuana from outside of trailer home); *State v. Hook* (1992), 255 Mont. 2, 3, 839 P.2d 1274, 1275 (officer confirms address and drives by house to confirm description of exterior); *Kuneff*, ¶ 7 (officers admitted into home and observe paraphernalia). Similarly, in some instances, officers have investigated the scene of an alleged crime, and gathered evidence that

verifies the informant's information. *See Oleson*, ¶ 10. Another routine piece of information indicating police corroboration is criminal background checks. *See*, *e.g.*, *State v. Mosley* (1993), 260 Mont. 109, 114, 860 P.2d 69, 72; *Rydberg*, 239 Mont. at 73, 778 P.2d at 904. Characteristically, none of these acts of independent law enforcement corroboration or investigation require further corroboration by an officer. *But see Kaluza*, 272 Mont. at 411, 901 P.2d at 111 (determining that power usage information gathered by police that lacked "detailed comparisons" with average and previous resident's usage was insufficient); *Wilson*, 254 Mont. at 319, 837 P.2d at 1347 (information about power usage in search warrant application was conclusory). Further, although under our decision in *Rinehart* a Crimestoppers tip may provide *some* corroboration and indicate the veracity of other information provided, an anonymous source as well as hearsay information nevertheless requires further corroboration. *See Rinehart*, 262 Mont. at 212, 864 P.2d at 1224.

¶46 The State concedes that the statements of the confidential informant in the search warrant application here "needed to be independently corroborated." The State then attempts to supplant actual law enforcement officers' corroboration with information from an anonymous citizen who, uncannily, "provided reliable information in the past." Notwithstanding this obvious contradiction, we hold that a source of information that requires further corroboration under the analysis set forth here cannot serve as a source of independent corroboration or investigation that transforms another informant's information into a basis for establishing probable case. As our case law makes clear, an anonymous source *always* requires corroboration. *See Worrall*, ¶ 22.

¶47 Finally, the reference to the "anonymous citizen" in the application provides no indicia of reliability of a citizen informant in terms of personal observation, or the circumstances under which the person made his or her personal observations. Thus, even ignoring the "anonymous" status of the citizen informant, the inclusion of this piece of information offers no corroboration value to the warrant application as a whole.

¶48 Accordingly, we conclude that the application for a search warrant did not provide a substantial basis for the conclusion that probable cause existed for the search of the Big Sky trailer home in which Reesman resided. We hold, therefore, that the District Court erred in denying Reesman's motion to suppress evidence obtained during the execution of the search warrant. Reversed and remanded for further proceedings consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

Justice Jim Regnier concurring.

¶49 I concur that the search warrant application in this case was insufficient in that it did not provide a substantial basis for the conclusion that probable cause existed to search the trailer home in which Reesman resided. However, I disagree with the Court's reasoning. In my view the Court's conclusion that corroboration must be accomplished through "police investigation" is too restrictive. I would conclude that the confidential informant's report was not sufficiently corroborated by the tip from the anonymous citizen because the circumstances provided by Detective Hanson concerning who provided the tip and how the tip was acquired were too conclusory for a magistrate to independently review.

1. Confidential Informant's Report

¶50 I agree with the Court's conclusion that the information provided by the confidential informant was insufficient, standing alone, to justify the issuance of a search warrant. In analyzing the sufficiency of a search warrant application, we have previously stated:

> To address the issue of probable cause for issuance of a warrant, this Court has adopted the "totality of the circumstances" test set forth in *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the magistrate], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. [T]he duty of the reviewing court is to ensure the magistrate had a "substantial basis" for . . . conclud[ing] that probable cause existed.

*State v. Wilson* (1992), 254 Mont. 317, 318-19, 837 P.2d 1346, 1347 (citations omitted).

¶51 The first source of Detective Hanson's information was referred to as "Confidential Informant 95-1128." Detective Hanson stated that he conducted an interview with this confidential informant who advised Detective Hanson that the confidential informant had visited the trailer home in which Reesman resided and had observed marijuana plants growing in a bedroom closet, drying marijuana "buds," and Styrofoam cups containing "psilocybin mushrooms."

¶52 Detective Hanson provided sufficient information in the search warrant application for the reviewing judge to determine that the confidential informant's report, if honest, was likely to be true because the informant's knowledge was based on the informant's personal observations of criminal activity. *See State v. Rinehart* (1993), 262 Mont. 204, 213, 864 P.2d 1219, 1224. If an informant's report purports to be based on personal observation of criminal activity, further analysis centers not on the accuracy of the report, but on the honesty or veracity of the informant. *See Rinehart*, 262 Mont. at 213, 864 P.2d at 1224 (holding that a previously reliable informant's report of criminal activity which was based on personal observation was sufficient to establish probable cause to issue a search warrant).

¶53 Under the "veracity" test, facts must be brought to the judicial official's attention so that the judge can independently determine the inherent credibility of the informant, *see, e.g., State v. Kaluza* (1995), 272 Mont. 404, 410, 901 P.2d 107, 111 (stating that an officer's sworn statement that an informant has been reliable and provided accurate information on other occasions is sufficient to establish veracity); or facts must be brought to the judicial official's attention so that the judge can independently determine the reliability of the informant's information on this particular occasion, *see State v. Adams* (1997), 284 Mont. 25, 36, 943 P.2d 955, 961 (observing that "[a]dmissions of crime, like admissions against proprietary interests, carry their own indicia of credibility"); *State v. Worrall*, 1999 MT 55, ¶ 20, 293 Mont. 439, ¶ 20, 976 P.2d 968, ¶ 20 (stating that "information provided to the police that is motivated by good citizenship is a reliable basis for determining probable cause").

¶54 Detective Hanson provided absolutely no information regarding the confidential informant's veracity. Detective Hanson did not indicate that the confidential informant was inherently credible because the informant had a proven track record of providing

reliable information in the past. Alternatively, Detective Hanson did not indicate that although the confidential informant did not have a proven track record of providing reliable information, the confidential informant's report was likely to be particularly reliable on this occasion because, for instance, it was an admission against the informant's interest, or circumstances indicated that the report was motivated by good citizenship.

¶55 Accordingly, I agree with the majority's conclusion that the confidential informant's report, standing alone, did not provide a sufficient basis for the issuance of a search warrant.

> 2. Corroboration by "Anonymous Citizen"
>
> a. Court's approach: "independent police work"

¶56 As the Court correctly frames it, the issue then becomes whether the confidential informant's report was independently corroborated such that, despite its inadequacy, it could still form part of the basis for the issuance of a search warrant. The only corroboration of the confidential informant's report was contained in the following statement: "An anonymous citizen, who has provided reliable information in the past, stated that the marijuana grow has been in existence for approximately one year."

¶57 The Court concludes that this corroboration is deficient for two reasons. First, the corroboration was insufficient because it did not provide an independent basis for a determination of probable cause. *See* Court's opinion at ¶ 46 (stating that "we hold that a source of information that requires further corroboration . . . cannot serve as a source of independent corroboration"). Second, the corroboration was insufficient because it was not the result of "police investigation." Court's opinion at ¶¶ 41-45. Pursuant to the Court's opinion, the *only* corroboration that can serve to cure the inadequacies of an informant's report is corroboration through "independent investigation" by law enforcement personnel. *See* Court's opinion at ¶ 43. In effect, the Court's conclusion means that an application for a warrant that contains information from an informant can only be sufficient under two factual scenarios: either (1) the informant's report provides a sufficient basis for a determination of probable cause and therefore does not require any further corroboration; or (2) an informant's report is insufficient but is "corroborated" by "police investigation."

¶58 In my view, corroboration by "police investigation" is certainly a reliable method of

corroboration, however, corroboration could be accomplished by other means as well. More importantly, however, I fear this requirement diverts the judicial officer's attention from the more important question which, on the facts of the instant case, is whether Detective Hanson presented sufficient information for the judge to accredit the confidential informant's report.

¶59 Significantly, as with all bright line tests, the majority's line is not as bright as it first appears. It is not clear what independent police corroboration is. For example, had Detective Hanson simply alleged "*I called an* anonymous citizen . . . " would the addition of those three words turn the corroboration in this case into "police work" sufficient to justify the issuance of a warrant? If so, why? What purpose does this distinction serve in the probable cause analysis? Although I agree with the majority that in most circumstances it will take independent police work to corroborate an informant's report that does not provide a sufficient basis for a determination of probable cause on its own, I believe that resolving these disputes based on simple factual characterization concerning how the corroborative information was acquired distracts law enforcement, judges, and reviewing courts from the purpose behind the warrant requirement.

b. Analysis of concurrence

¶60 The corroboration of the confidential informant's report was that "[a]n anonymous citizen, who has provided reliable information in the past, stated that the marijuana grow has been in existence for approximately one year."

¶61 Detective Hanson characterized the source of this knowledge as an "anonymous citizen." The use of the term "anonymous" implies that the source was unknown to Detective Hanson. The use of the word "citizen" implies that the source was motivated by good citizenship. *See Worrall*, ¶ 20 (observing that "information provided to the police that is motivated by good citizenship is a reliable basis for determining probable cause"). However, the phrase "who has provided reliable information in the past" belies both of the aforementioned assumptions. From this phrase, it becomes clear that Detective Hanson was alleging that he knew the source's identity because the source had provided him with information in the past, but was keeping the source's identity confidential. Furthermore, it is evident that the source was not simply a "citizen," but rather was a person who had ongoing access to information about unlawful activities. Detective Hanson did not provide any circumstances regarding how he acquired the information from the "anonymous citizen" nor did he provide any circumstances which might indicate how the

"anonymous citizen" learned of the "marijuana grow" operation. Lastly, the only relevant information Detective Hanson provided concerning the "anonymous citizen" was Detective Hanson's characterization of the "anonymous citizen's" reliability.

¶62 I would conclude that this corroboration is insufficient to cure the inadequacy of the confidential informant's report because it is simply too conclusory. A judge would have to take too many leaps of faith in order to conclude that the "anonymous citizen's" report was corroborative of the confidential informant's report. The search warrant in the present case does not detail any of the underlying circumstances of the "anonymous citizen's" report and provides only the slightest reason for crediting this report (Detective Hanson's characterization of the "anonymous citizen's" previous reliability). I agree with the Court that the addition of this purely conclusory report adds absolutely nothing to the search warrant. However, this is not because it was, or was not, acquired by independent police work, but rather because there is no reason to believe that it in fact corroborated the confidential informant's report. The precise problem is that this "corroboration" is nothing more than a collection of bare assertions. As we previously stated in *Wilson*, "Detail was not provided to support the conclusions drawn within the application. Conclusory statements will not provide substantial basis to conclude that probable cause existed to issue a search warrant." 254 Mont. at 319-20, 837 P.2d at 1348.

¶63 I recognize that reviewing courts should refrain from being hypertechnical when reviewing the legality of a search warrant. We have previously stated:

> An affidavit supporting a search warrant is to be interpreted by the magistrate and examined by the reviewing court in a common sense, realistic fashion and without a grudging or negative attitude that will tend to discourage police officers from seeking warrants. Reviewing courts should avoid hyper- technical interpretations of warrant applications and, in doubtful or marginal cases, resolve the issue with the preference for warrants in mind.

*Rinehart*, 262 Mont. at 210-11, 864 P.2d at 1223 (citing *State v. O'Neill* (1984) 208 Mont. 386, 679 P.2d 760).

¶64 The source of this oft-repeated language is *United States v. Ventresca* (1965), 380 U. S. 102, 85 S. Ct. 741, 13 L. Ed. 2d 684. *O'Neill*, 208 Mont. at 393, 679 P.2d at 764. Interestingly, the next paragraph in *Ventresca*, which we have neglected to repeat, states:

This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the "underlying circumstances" upon which that belief is based. Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform [the magistrate] detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hyper technical, rather than a common sense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.

*Ventresca*, 380 U.S. at 108, 85 S. Ct. at 746 (citations omitted).

¶65 The Supreme Court's exhortation to resolve questionable cases in favor of upholding warrants is much more subtle and sophisticated than we have previously implied. I would interpret the forgoing to mean that when an affidavit is not purely conclusory, but rather details the underlying circumstances and supplies some reason for crediting the source of the information, a reviewing court should resolve a doubtful case with a preference for upholding the warrant. In the instant case, the confidential informant's report was insufficient because the search warrant application provided no evidence of the confidential informant's veracity. Additionally, the "anonymous citizen's" report was not corroborative because it was merely a collection of bare assertions and thus could not supply an independent reason for crediting the confidential informant's report. However, this is not to imply, as the Court does, that information not acquired through "independent police investigation" can never corroborate an insufficient informant's report unless it provides a sufficient basis on its own to support probable cause. *See* Court's Op. at ¶ 46. It is conceivable that had Detective Hanson provided some of the underlying circumstances surrounding the "anonymous citizen's" report, there may have been a substantial basis for the judge reviewing the application to conclude that there was a fair probability that contraband or evidence of a crime would be found in the trailer home.

¶66 In short, for the benefit of law enforcement, I recommend the following advice: A sufficient warrant application should always detail both how the officer acquired the information giving rise to probable cause, and, if the officer is relying on an informant,

how the informant acquired his or her knowledge and circumstances which would indicate that the informant's report is worth crediting. For instance, as noted by the majority, Detective Hanson could have indicated how the confidential informant happened to be in the trailer home and this may have provided the judge with grounds for crediting the veracity of the confidential informant's report. *See* 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.3(f) at 172, (3d ed. 1996) ("[A]nother situation in which the corroboration will suffice to show veracity is that in which the informant has not been working independently, but rather has cooperated closely with the police."). Regarding the "anonymous citizen's" report, Detective Hanson could have described the circumstances surrounding how he received the report from the "anonymous citizen," how he knew the "anonymous citizen," why he believed the "anonymous citizen" was credible, and how the "anonymous citizen" acquired his or her knowledge.

¶67 For the foregoing reasons, I concur that the warrant application was insufficient. To conclude otherwise would be to render the constitutional search warrant requirement a mere formality. The corroboration of the confidential informant's report by the tip from the "anonymous citizen" was simply too conclusory to allow a judge to independently determine the existence of probable cause to justify the issuance of a warrant.

/S/ JIM REGNIER

Justice Karla M. Gray joins in the foregoing concurrence.

/S/ KARLA M. GRAY

¶68 Implicit in the concurring and dissenting opinions[2] are two notions: first, that the majority opinion has broken new ground or in some measure strayed from the principles set forth in *Illinois v. Gates* and subsequent Montana decisions; and, second that, in doing so, the majority has imposed an additional burden on law enforcement by creating yet another technical "hoop" for police officers to jump through in their efforts to ferret out crime and apprehend the guilty through the use of informants. Both conclusions are incorrect.

¶69 Nevertheless, given the hostile knee-jerk reaction that typically attends the issuance of court opinions that are perceived--whether wrongly or rightly--as either making life more difficult for the police or enforcing (much less enlarging) the constitutional rights of

persons accused of crimes, a response to the concurring opinion is necessary.

¶70 Although agreeing with the majority opinion that the search warrant application in this instance was insufficient, the concurring opinion suggests that the corroboration of information supplied by an unreliable source may be accomplished by means other than further police investigation. No authority is cited for this novel proposition. This, of course, begs the question, "What other means are envisioned?" The concurrence never says.

¶71 As indicated in the majority opinion, further police investigation of an otherwise unreliable source of information is the heart and soul of the U.S. Supreme Court's decision in *Illinois v. Gates*, which this Court has followed since 1984. The U.S. Supreme Court stated that "[o]ur decisions applying the totality of the circumstances analysis outlined above have consistently recognized the value of corroboration of details of an informant's tip by *independent police work*." *Gates*, 462 U.S. at 241, 103 S.Ct. at 2334 (emphasis added). The Court then discussed the "classic case on the value of *corroborative efforts of police officials*." *Gates*, 462 U.S. at 242-43, 103 S.Ct. at 2334 (discussing *Draper v. United States* (1959), 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327) (emphasis added). The Court also provided a detailed summary of detective Mader's corroborating efforts after receiving the anonymous letter that sparked the investigation of the Gates' drug selling operation: he sought driver's licence information, he confirmed the Gates' address, he conferred with another police officer and confirmed airline flight information, and he contacted Drug Enforcement Administration agents and arranged for a surveillance operation that gathered further corroborating information.

¶72 It was the recognition of these independent sources of information uncovered by further police efforts that led to the Court's reversal of the Illinois Supreme Court's decision, which had determined that Mader's search warrant application was defective due to the lack of reliability of the original informant's anonymous letter. Thus, an informant's letter that the Court recognized "standing alone . . . would not provide the basis for a magistrate's determination that there was probable cause to believe contraband would be found in the Gates' car and home" had been "corroborated in major part by Mader's efforts." *Gates*, 462 U.S. at 227, 243, 103 S.Ct. at 2326, 2335. The Court further provided:

> The Supreme Court of Illinois reasoned that *Draper* involved an informant who had given reliable information on previous occasions, while the honesty and reliability of the anonymous informant in this case were unknown to the Bloomingdale police.

While this distinction might be an apt one at the time the police department received the anonymous letter, it became far less significant after Mader's *independent investigative work* occurred.

*Gates*, 462 U.S. at 243-44, 103 S.Ct. at 2335 (emphasis added).

¶73 Thus, under *Gates*, once officers receive information of illegal activities from sources that do not establish probable cause "standing alone," such information may nevertheless serve as a basis for establishing probable cause if the officers subsequently corroborate the information through independent investigation. As made plain in the majority opinion, there is no prescribed limit as to what independent resources--including the use of other informants--an officer might use for this corroboration. *See* majority opinion, at ¶ 45.

¶74 Rather, the majority opinion carefully maps Montana case law, dividing information supplied by informants into two distinct categories: that which may stand alone for a probable cause determination, and that which requires further police investigation. In this instance, the information supplied by both the confidential informant and the anonymous citizen, standing alone, clearly falls into the latter category, and therefore each required further "corroboration through *other sources of information*." *Gates*, 462 U.S. at 244, 103 S.Ct. at 2335 (emphasis added). Further, it is patently unclear from the warrant application at issue whether the information supplied by the "anonymous citizen" was, in fact, gathered for the purpose of corroborating the confidential informant's information. Thus, this tip may have in fact been received prior to the confidential informant's November 1995 meeting with Detective Hanson, which, if true, emphasizes the lack of further investigation by officers in this case.

¶75 It is unclear, therefore, why the concurrence chooses to belabor under what circumstances the information supplied by one unreliable source could, conceivably, corroborate another unreliable source without "further police investigation," and yet still establish probable cause.

¶76 The underlying fallibility of the concurrence's reasoning on this point is revealed by the lengths to which it would be necessary for Detective Hanson to cure the defects of the "anonymous citizen," as a corroborating source of information. According to the concurring opinion, it is conceivable that had Detective Hanson provided some of the underlying circumstances surrounding the anonymous citizen's report, "there may have been a substantial basis for the judge reviewing the application to conclude that there was

a fair probability that contraband or evidence of a crime would be found in the trailer home." According to the concurrence, Detective Hanson should have (1) described the circumstances surrounding how he received the report from the anonymous citizen, (2) how he knew the anonymous citizen, (3) why he believed the anonymous citizen was credible, and (4) how the anonymous citizen acquired his or her knowledge. *See* concurring opinion, at ¶ 66. Consequently, the inclusion of this information could have corroborated the information supplied by the confidential informant, and led to a proper probable cause determination--again, without further investigation by officers.

¶77 Accordingly, Detective Hanson could have attested in the warrant application (1) that he received a crime-stopper tip by phone; (2) that the person chose to identify him or herself, and that, in turn, he knew the person; (3) that the person had provided reliable and accurate information in the past; and (4) that the person had personally observed the grow operation during the course of the past year. The concurrence finds this process--which does not appear to involve "further investigation"--satisfactory to corroborate the confidential informant's information. And there is a good reason why. This is precisely the process outlined in the majority opinion.

¶78 First, the person is not anonymous. Second, the source personally observed the illegal activity. And third, the informant has provided reliable and accurate information in the past. If this had been the factual circumstances, as the concurring opinion suggests, the issue of "independent investigation" would be irrelevant, because none would be required. Alternatively, at the risk of rehashing that which has already been made clear, under Montana case law if the person remained anonymous, further corroboration would have been required; if the source had not personally observed the illegal activity, further corroboration would have been required; and finally if the informant had not provided reliable and accurate information in the past, or was not a "concerned citizen," further corroboration would have been required.

¶79 Thus, it remains unclear how the information provided by either the confidential informant or the anonymous citizen in this instance could have been cured for the purpose of establishing probable cause by anything short of further police investigation, using other sources of information.

/S/ JAMES C. NELSON

Justice W. William Leaphart joins in the foregoing response to the concurring and

dissenting opinions.

### /S/ W. WILLIAM LEAPHART

Chief Justice J. A. Turnage, dissenting.

¶80 I respectfully dissent from that portion of the majority opinion at ¶¶ 41-45, concluding that corroboration for a search warrant can only be sufficient if it is the result of "police investigation." As stated in Justice Regnier's concurring opinion, "[p]ursuant to the Court's opinion, the *only corroboration* that can serve to cure the inadequacies of an informant's report is corroboration through 'independent investigation' by law enforcement personnel." This requirement is too restrictive. Certainly corroboration can be obtained in many ways other than "independent police investigation." For that reason, I dissent from the majority opinion.

¶81 The well-reasoned discussion concerning other aspects of the inadequacies of the warrant application in Justice Regnier's concurring opinion I believe to be correct, and, therefore, I join in that part of the concurring opinion.

### /S/ J. A. TURNAGE

1. We note that this rule as it appears in more recent case law includes the term "only," meaning that *only* when an informant is anonymous or provides hearsay must further corroboration be supplied by law enforcement officers. *See State v. Worrall*, 1999 MT 55, ¶ 22, 293 Mont. 439, ¶ 22, 976 P.2d 968, ¶ 22 (citing *State v. Adams* (1997), 284 Mont. 25, 37, 943 P.2d 955, 962, which cites to *State v. Rinehart* (1993), 262 Mont. 204, 212, 864 P.2d 1219, 1224). As the following discussion indicates, the inclusion of this term misconstrues the rule as it originally appeared in *Rinehart*. We observe, therefore, that under *Worrall*, *Adams*, and *Rinehart*, further corroboration is *always* required when an informant is anonymous or provides mere hearsay, and yet further corroboration may be required in other instances as well.

2. For purposes of this separate opinion I will treat the dissenting opinion as being included within the concurring opinion as the former sets out no rationale independent of the latter.